[No. 11368.   Department Two. — September 30, 1886.]

JOHN WALLACE ET AL., RESPONDENTS, v. AH SAM
ET AL., APPELLANTS.

BREACH OF CONTRACT TO CONSTRUCT LEVEE — MEASURE OF DAMAGES —
LOSS OF POSSIBLE PROFITS. — In an action to recover damages for the
breach of a contract whereby the defendant agreed to construct a levee
around certain swamp and overflowed land for the purpose of reclaiming
it, the plaintiff is not entitled to recover damages on account of the loss
of possible profits which might have accrued to him under a lease of the
land executed by him, without the knowledge of the defendant, after
the breach of the contract.

APPEAL from a judgment of the Superior Court of San
Joaquin County, and from an order refusing a new trial.

The facts are stated in the opinion.

*McAllister & Bergin, William L. Dudley,* and *R. Thompson,* for Appellants.

The damages based on the loss of the crops were too
remote. (*Giaccomini* v. *Bulkeley,* 51 Cal. 261; *Friend
and Terry Lumber Co.* v. *Miller,* 67 Cal. 464; *The Schooner
Lively,* 1 Gall. 315; *Rhodes* v. *Baird,* 16 Ohio St. 581; *Fox*
v. *Harding,* 7 Cush. 522; *Devlin* v. *Mayor,* 63 N. Y. 25;
*Masterson* v. *Mayor,* 7 Hill, 61; S. C., 42 Am. Dec. 38;
*Hadley* v. *Baxendale,* 9 Ex. 341; *Williams* v. *Benton,* 10
La. 158; *Goodloe* v. *Rogers,* 10 La. Ann. 631.}

*J. C. Campbell,* and *J. H. Budd,* for Respondents.

The damages on account of the loss of crops were properly allowed. (*Kenyon* v. *Goodall,* 3 Cal. 257; *Miller* v.
*Mariner's Church,* 7 Greenl. 51; S. C., 20 Am. Dec. 341;
*Messmore* v. *N. Y. Shot and Lead Co.,* 40 N. Y. 422; *Passinger* v. *Thornburn,* 34 N. Y. 641; *Page* v. *Pavey,* 8 Car. & P.
769; *Smeed* v. *Ford,* 102 Eng. Com. L. 612; *Myers* v. *Burns,*
35 N. Y. 269; *Wagner* v. *Corkhill,* 3 Barb. 175; *Culver* v.
*Hill,* 68 Ala. 66; *Hexter* v. *Knox,* 63 N. Y. 561; *Ruff* v.
*Rinaldo,* 55 N. Y. 664; *Willey* v. *Fredericks,* 10 Gray, 357.)

SEARLS, C.—On the first day of April, 1881, William S. Moss entered into an agreement with John Wallace, Frank T. Baldwin, and H. T. Compton, Jr., whereby, in consideration of the covenants and agreements to be kept and performed by the parties of the second part, he bound himself to convey to them the northern half (less 150 acres) of a certain tract of land by him owned in the county of San Joaquin.

The tract was swamp and overflowed land, and the consideration upon which the conveyance was to be made required the parties of the second part to reclaim the whole tract from overflow, by means of levees, dams, and floodgates, to be by them constructed at their own cost and charge. The agreement specified the dimensions of the levee, etc., and contained a further provision that upon the completion of one third of the length of the levee Moss would join with the second parties in the execution of a mortgage on the entire tract of land to secure the payment of such sum or sums of money as it might become necessary to raise to complete the work.

No time was specified within which the work was to be done, but it was provided that upon a failure to comply with the provisions of the contract, the agreement to convey should become null and void, and the second parties should forfeit all right thereto.

On the twenty-fifth day of July, 1881, Wallace, Baldwin, and Compton, who had agreed to build the levee, entered into a written agreement with Ah Sam, Soon Fook, and Lee Fook, defendants herein, whereby the latter undertook to construct the earthwork of the levees at a given price per cubic foot. The work was to be commenced by the first day of August, 1881, and completed by December 1, 1881.

This second contract recites generally the making of the contract with Moss for the sale of the land, the agreement with him to construct the levees, and refers to the record of that contract, etc.

There are a number of other provisions in the second contract, one of which is that authorizing the parties of the first part to hire and put on men to work, provided they should be satisfied the parties of the second part were not likely to complete the work within the time limited, but such additional men were not to be employed until the expiration of the first month, and if employed were to be so located as not to interfere with the work of the second parties.

The contract also recited the provision for a mortgage as specified in the contract with Moss, and provided for a further loan from defendants, to be secured by a second mortgage on the land to be conveyed to Moss, etc.

The two contracts are set out in the pleadings, and we have only recited such of their provisions as are deemed material to the questions hereinafter considered.

Defendants did not complete the levees by December 1, 1881, there being at that date about one mile thereof remaining to be constructed. They continued to work upon this unfinished portion until on or about March 19, 1882, when they abandoned the work, and a flood coming on, the land was overflowed, and could not be cultivated during the year 1882.

The court below, in making up the account between plaintiffs and the contracting defendants, allowed the former seven thousand five hundred dollars damages on account of the loss of a crop upon the land for the year 1882.

The evidence upon which this finding is based tended to show the quantity of grain that could have been produced upon the land in 1882, had the levees been completed in 1881, as per contract, and the prices at which the same could have been sold.

Also that in February, 1882, plaintiffs had leased the land in question, or 1,210 acres of it, to sundry persons for a term of five years, from November 1, 1881, they, the said plaintiffs, to receive as rent therefor one third

of the crops raised each year delivered to them in Stockton.

This evidence was all admitted against the objections of defendants, who excepted to the rulings of the court admitting it, and now assign its admission as error.

The contention of appellants is, that the probable profits on crops not planted are too remote to be allowed in this, an action to recover damages for a breach of contract for the construction of levees.

The argument is based upon the idea that the leases were not made until February, 1882, long after the contract for constructing the levees had been entered into, and could not have been contemplated by the parties when the contract was made.

In *Giaccomini* v. *Bulkeley*, 51 Cal. 261, which was an action in tort for destroying a fence, it was held that evidence to prove that the land would support a given number of cows and hogs, and showing the profits that might have been reaped from them (it not appearing that plaintiff had such animals), was too remote and speculative. (See also *Friend etc. Lumber Co.* v. *Miller*, 67 Cal. 464, and cases there cited.)

In *Hadley* v. *Baxendale*, 26 Eng. L. & Eq. 398, it was said:—

"Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such a contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated.

"But, on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected '

by any special circumstances for such a breach of his contract."

Ordinarily, the measure of damages for the breach of a contract to construct a levee, a fence, or any similar work is: 1. If payment has been made, the cost of constructing the work; 2. If payment has not been made, the excess of the cost of the work over the contract price.

This we term general damages, and it involves the loss which naturally flows from, and is presumed from, the contract and its breach.

In addition thereto, there may be a recovery of such further loss or detriment occasioned by the breach of the contract, and proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom.

This last we term special damages, and it is awarded upon the theory that the parties who contracted with a full knowledge of the facts, circumstances, and objects of the agreement, may well be supposed to have had in contemplation all the proximate and natural results flowing from its breach.

In the present case there is such reference made to the contract of plaintiffs with Moss that we are authorized to conclude that defendants contracted to build the levee with full knowledge that it was to be the consideration or condition upon which the land was to be conveyed to plaintiffs, and that the completion of the levee was a condition precedent to the conveyance.

When, therefore, the defendants violated their contract to complete the levee by December 1, 1881, they must be presumed to have done so with full knowledge that the direct and immediate consequence of such violation was to prevent plaintiffs from procuring a conveyance of the land until the levee was completed.

It follows that under such circumstances, defendants should be held liable for the use and occupation of the land in its then condition during such reasonable time

as was necessary for plaintiffs to complete the violated contract, and thus entitle themselves to a conveyance from Moss, if prevented from occupying and using the land by the non-completion of the levee.

It does not necessarily follow, however, that the method adopted in the court below was a proper one for estimating the value of the user of the land.

The leases offered in evidence were executed not only after the defendants had entered into the contract, but after its breach.

The land, except a small portion of it, was not cultivated, or sown to grain of any kind, and had it been, we are at a loss to see how plaintiffs would have been entitled to the crops raised upon land which they did not own.

It seems to us that the rule adopted in the court below, if applied to contracts of this character, would tend largely to place it in the power of parties entitled to recover damages to regulate the amount of recovery to suit themselves.

There would be but little risk in contracting to give one third of a crop which the parties all knew could not be raised.

If it be said the leases were for five years, and therefore any inference of a want of good faith, because the land was not susceptible of cultivation during the first year, is unfounded, we reply, that while it tends to meet the objection named, it at the same time suggests another; viz., that it may well be that a tenant could afford to give one third of the crops raised upon lands of this character for a term of five years, yet owing to the inherent difficulties of cultivating such lands in the first instance, he would be unwilling to give a like quantity or proportion the first year.

We have no reason to believe that plaintiffs acted in bad faith in executing the leases specified in the record, and we only refer to the possibility of such conduct for

the purpose of showing that the rule under which such a course may be pursued is inherently vicious.

Had defendants contracted with plaintiffs to crop the land for the year 1882, yielding in return one third of the crop, and then failed to comply with their agreement, the basis adopted here would have been proper.

In such a case, it could properly be said they contracted with a view to the damages proven.

Again, had the leases been executed before defendants agreed to construct the levee, and had their agreement been made with full knowledge of such leases and their conditious, it might with propriety be held that their liability should be measured by the conditions in the leases.

Here, however, the measure of damages is made to depend upon a subcontract with which the defendants had nothing to do, of which they knew nothing, and with a view to the terms of which they cannot be supposed to have contracted.

In other words, the. subcontracts of plaintiffs, with their several lessees, and the possible profits which they might have derived therefrom, are substituted for the value of the premises during the year 1882.

This we think was, under the circumstances of this case, erroneous.  (*Olmstead* v. *Burke*, 25 Ill. 86; *Rhodes* v. *Baird*, 16 Ohio St. 581; *Fox* v. *Harding*, 7 Cush. 522; *Devlin* v. *Mayor*, 63 N. Y. 25; *Masterson* v. *Mayor etc.*, 7 Hill, 61; S. C., 42 Am. Dec. 38.)

The judgment and order appealed from should be reversed and a new trial ordered.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

Hearing in Bank denied.