[Civ. No. 3959. Second Appellate District, Division One.—October 6, 1922.]

# A. W. McCREADY, Jr., Respondent, v. W. S. BULLIS, Appellant.

[1] LANDLORD AND TENANT—AGREEMENT TO PRODUCE WATER SUPPLY —INTENTION OF PARTIES—CONSTRUCTION OF LEASE.—Where land is leased for agricultural purposes, and it is known by both parties to be valueless for such purposes unless water is supplied for irrigation, a provision in the lease that the lessor shall sink an artesian well on the property "of at least twelve inches' diameter from which water may be pumped by the lessee should said well not flow. The said well to be sunk . . . in ample time for the requirements of the lessee," will be construed as requiring the lessor to sink a well from which the lessee might obtain a quantity of water adequate to properly irrigate the land.

[2] DAMAGES—GENERAL—SPECIAL.—Damages are either general or special. General damages are such as the law implies, or presumes to have accrued from the wrong complained of; while special damages are such as really took place and are not implied by law.

[3] ID.—SPECIAL DAMAGES—PLEADING.—When the damages are special —that is, such as do not necessarily arise, or are not implied by law, from the act complained of—the facts out of which the damages arise must be averred in the complaint.

[4] ID. — BREACH OF CONTRACT — DAMAGES RECOVERABLE.—Upon the breach of a contract, the offending party can only be held for such damages as it will be inferred may ordinarily result, considering the contract terms; and if there are special circumstances under which the contract was made, because of which damage results from the breach, these special circumstances must have been made known to the party committing the breach at the time the contract was entered into.

[5] ID.—BREACH OF LEASE—LESSEE'S GENERAL DAMAGE.—Where the lessor fails to make the demised premises available for the intended use by producing water thereon sufficient for irrigation, the lessee's general damage is the rental value of the land.

[6] ID.—TRANSPORTATION OF PROPERTY TO LEASED PREMISES—DAMAGE CONTEMPLATED.—Where the use for which the land was leased included the raising of hogs and cattle, but at the time of making the lease the lessor did not understand the circumstances which required the lessee to bring his farming implements, hog wire, posts, etc., from a point about one hundred miles distant, where they had theretofore been in use by the lessee, it cannot

be said that special damages incurred on that account were in contemplation of the parties.

[7] Id.—Cost of Moving—Pleading—Evidence.—Conceding that the cost of moving such property is recoverable as damages in an action by the lessee against the lessor for damages because of the failure of the latter to produce on the demised premises water sufficient for irrigation, proof that plaintiff and one of his employees did the moving will not support an allegation that plaintiff "expended" a certain sum of money on that account. If he chooses to recover the value of his own services and for the use of his vehicle, the facts respecting such matters must be particularly alleged.

[8] Id.—Failure to Produce Water—Rescission—Damages.—Upon the failure of the lessor to make the demised premises available for the intended use by producing water thereon sufficient for irrigation, if there was a rescission of the contract of lease, the parties were entitled to be placed *in statu quo*, and the lessee was entitled to recover all of the rental paid, but if he recovered the rental paid he could not recover expectant profits.

[9] Id.—Net Profits—Expenses Deductible.—If the plaintiff in framing his pleadings did not intend to rely upon a claim of rescission and, therefore, was entitled to a recovery as for profit on crops, that profit would mean net profit, to produce which there should be deducted as a charge against the plaintiff all sums expended in the production or attempted production of the same, including rental and the reasonable cost of bringing the crops to maturity and marketing them.

[10] Id.—Prospective Profits in Future Crops—Evidence.—There is no less a right of recovery for prospective profits on a future crop than on a crop planted and which may not mature because of acts committed by a lessor constituting a breach of the contract of lease. The question becomes more a question of evidence —that is, profits on crops to be grown in the future may be difficult to establish with any reasonable certainty and, because of that difficulty, may in particular cases be classed as speculative and hence not recoverable.

[11] Id.—Improper Allowance for Feed Purchased.—Plaintiff having been compensated for the crop damage suffered, it was improper to make a further allowance for the cattle and hog feed purchased by him.

[12] Id. — Prior Ownership of Hogs — Loss not Contemplated.— Plaintiff having acquired the lot of hogs while engaged in the business of hog-raising on his father's ranch in another county, and not having acquired them especially for the purpose of stocking the defendant's land, it cannot be said that the loss suffered by plaintiff due to his being compelled to sell the hogs for less than their value, because of the failure to obtain water and feed

on the land leased from defendant, was attributable to the defendant's having breached his agreement to produce a sufficient supply of water.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

John E. Biby and Harry C. Biby for Appellant.

Chandler P. Ward and Stephens & Stephens for Respondent.

JAMES, J.—Defendant has appealed from a judgment allowing a recovery to the plaintiff of the sum of $5,977 as damages.

On the second day of October, 1917, defendant, being the owner of a certain seventy acres of land in Los Angeles County, entered into a written contract of lease whereby he let the same to the plaintiff for a period of three years. As rental therefor plaintiff was to pay the sum of $1,200 for the first year and, as is stated in the lease, "for the remaining two years the sum of $1,500." By a term of the lease it was required that the lessor should sink an artesian well on the property "of at least twelve inches' diameter from which water may be pumped by the lessee should said well not flow. The said well to be sunk in the spring of 1918 in ample time for the requirements of the lessee, and to be located as agreed upon by the parties hereto. Lessor also agrees to equip said well with a good and sufficient electric motor or gasoline engine and water pump." It appeared in evidence that the land was of agricultural nature and that, except for a small portion thereof, crops could not be raised without irrigation. At the time of the making of the lease there was an old well, engine, and pump on the property, which the defendant stated to plaintiff would probably not be sufficient for the purposes desired and, for that reason, it was agreed (the lessor himself writing in the condition) that a new well should be sunk at the lessor's expense. Early in the year 1918 the lessee complained to the lessor that the well was not being sunk expeditiously. How-

ever, a well was completed in May, 1918. At this well there was installed a pump and an engine, but the well, upon being tested, failed to produce water in quantities sufficient for irrigation purposes. That such was the fact appears to have been conceded by the lessor, who at a later date caused a second well to be sunk. To the second well a pump was attached but no means of operating the same were connected with it, and in October, 1918, the lessee, whose crops had failed for lack of water, abandoned the land, possession of which was resumed by the lessor. As a matter of fact, the second well, when subjected to a test subsequent to the time when the lessee abandoned the land, was found to produce ample water for the irrigation of the seventy acres.

[1] Appellant's first contention, construing the terms of the lease, is that his engagement regarding the sinking of the well did not require that any specific amount of water be produced—in other words, that if the well produced any water at all the condition of the lease was satisfied. Such a conclusion might be suggested by a consideration of the bare language used in the lease, but the contract must be construed in the light of the knowledge of the parties and their understanding of the conditions present. It was shown that the land was leased for agricultural purposes; that it was known by both parties to be valueless for such purposes unless water was supplied for irrigation. With these conditions in mind, the lessor agreed to provide a well from which the lessee might obtain water. In the light of the circumstances it is doing no violence at all to the expressions used in the contract to say that the agreement in fact was, as from the intention of the parties, that the well which the lessor agreed to sink should produce a quantity of water adequate for the purposes intended. The fact that the court found, as it did, that fifty miner's inches of water were required to properly irrigate the land, need not be analyzed by comparison with the evidence, for it is plain enough that no amount of water approaching an adequate supply was ever produced from any well up to the time the lessee elected to abandon the property after his crops failed.

On the subject of damages, appellant objects to several items included in the judgment of the court on the ground that the same are not proper damages to be recovered, partly because of their particular nature and partly on the ground

that such damages (in view of the fact, as appellant asserts it to be, that there had been a rescission of the contract) could in no event form the basis of a judgment.

The various items of damage which entered into the judgment may be summarized briefly as follows:

For moving equipment and implements from adjoining county .............................$ 400

Rental paid to defendant for year 1918........ 1,200

Paid for cattle and hog feed because of failure of crops ...................................... 600

For preparing land for crops other than for alfalfa and barley............................. 286

Net profit which would have been made on alfalfa and barley crop in 1918...................... 781

Loss sustained by sale of hogs and equipment.. 2,610

Paid for installing equipment................... 100

The damages allowed were all in their nature special damages. [2] They were not such as naturally and necessarily arose from the failure of appellant to supply with water the ground leased to respondent: " 'Damages are either general or special. General damages are such as the law implies, or presumes to have accrued from the wrong complained of. Special damages are such as really took place and are not implied by law, . . . (1 Chitty, Pl. 395.)' " (*Stevenson* v. *Smith*, 28 Cal. 102 [87 Am. Dec. 107].) [3] "When the damages are special—that is, such as do not necessarily arise, or are not implied by law, from the act complained of—the facts out of which the damages arise must be averred in the complaint." (*Lewiston Turnpike Co.* v. *Shasta & W. W. R. Co.*, 41 Cal. 562; *Mitchell* v. *Clarke*, 71 Cal. 163 [60 Am. Rep. 529, 11 Pac. 882].)

[4] A further principle of the law of contracts is that, upon breach committed, the offending party can only be held for such damages as it will be inferred may ordinarily result, considering the contract terms; and that if there are special circumstances under which the contract was made, because of which damage results from the breach, these special circumstances must have been made known to the party committing the breach at the time the contract was entered into. "If those special circumstances were wholly unknown to the party breaking the contract, he at most could only be supposed to have had in his contemplation the

amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances for such a breach of his contract." (*Wallace* v. *Ah Sam*, 71 Cal. 197 [60 Am. Rep. 534, 12 Pac. 46]; 3 Page on Contracts, secs. 1580, 1581.) The opinion in the case last cited further declares that where special damages are allowed upon breach of contract they are "awarded upon the theory that the parties who contracted with a full knowledge of the facts, circumstances, and objects of the agreement may well be supposed to have had in contemplation all the proximate and natural results flowing from its breach." [5] Plaintiff's general damage, assuming that his lessor failed to make the land available for the intended use by producing water thereon sufficient for irrigation, would be the rental value of the land. He makes no claim on that account, other than to demand the return of the $1,200 paid as rental for the first year of the term. [6] In stating his first item of damage plaintiff alleges that "he expended the sum of $400 in moving his equipment and implements to said property." The evidence did not support this allegation, for by the plaintiff's testimony it was shown that his "farming implements, hog wire, posts, a wagon, and a team of mules" were brought down in a motor-truck by the plaintiff with the assistance of an employee. These things were brought from a point about a hundred miles distant. While it was admitted by the answer that the use for which the land was leased included the raising of hogs and cattle, there was no evidence to show that at the time of the making of the lease the defendant understood the circumstances that required plaintiff to bring his farming equipment from such a distant point. That not being understood, it cannot be said, under the rules above declared, that special damages incurred on that account were in contemplation of the parties. [7] Conceding that the cost of moving the property described was recoverable as damages, the proof does not meet the allegations of the complaint, because it was not shown that plaintiff expended any sum on that account; if he chose to recover the value of his own services and for the use of his vehicle, the facts respecting such matters should have been particularly alleged.

The allowance of some of the other items of damages, as specified by the court in its findings, proceeds from two theories, which are conflicting. **[8]** If it be concluded under the facts that there was a rescission of the contract, then the parties would be entitled to be placed *in statu quo.* To work this result the plaintiff would have been entitled to recover all of the rental paid. If he recovered the rental paid he could not recover expectant profits, for, by a rescission, all contractual terms are put at an end and there can be no damages for an alleged breach in such circumstances. "If a party to a contract elects to rescind it, he cannot then continue to claim the benefits of the contract. He cannot go on and perform it nor can he claim compensation for loss of profits of it." (2 Sedgwick on Damages, 9th ed., sec. 655a.) If the party merely stands upon the breach committed by the other, as was the case here, and, being ready on his part to perform but being prevented from securing benefits intended to be derived under the contract by reason of the act of the second party, he in that event is entitled to abandon effort at further performance and recover damages for the breach, which, under the facts of this case, should include profits of which there might be a reasonable expectation. (*Anvil Mining Co.* v. *Humble et al.,* 153 U. S. 540 [38 L. Ed. 814, 14 Sup. Ct. Rep. 876, see, also, Rose's U. S. Notes]; Wald's Pollock on Contracts, 3d ed., p. 351; *Cox et al.* v. *McLaughlin et al.,* 54 Cal. 605.) **[9]** Plaintiff in framing his complaint evidently did not intend to rely upon claim of rescission, notwithstanding he demanded the return of the rental, which the court allowed him. If he was entitled to a recovery as for profit on crops, that profit would mean net profit, to produce which there should be deducted as a charge against the plaintiff all sums expended in the production or attempted production of the same, including rental and the reasonable cost of bringing the crops to maturity and marketing them. To allow to the plaintiff recovery of rental in such a case is to allow him more than a net profit on crops; in other words, it allows to him a net profit plus the rental paid. It requires no argument to show that such a judgment cannot be justified. (*Rice* v. *Whitmore,* 74 Cal. 619 [5 Am. St. Rep. 479, 16 Pac. 501]; *Teller* v. *Bay & River Dredging Co.,* 151 Cal. 209 [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942].)

[10] There is no less a right of recovery for prospective profits on a future crop than on a crop planted and which may not mature because of acts committed by a defendant constituting a breach of the contract. The question becomes more a question of evidence—that is, profits on crops to be grown in the future may be difficult to establish with any reasonable certainty and, because of that difficulty, may in particular cases be classed as speculative and hence not recoverable. Such is the trend of the decisions. (*Crow* v. *San Joaquin Irr. Co.*, 130 Cal. 309 [62 Pac. 562, 1058].) In the opinion in the case of *Shoemaker* v. *Acker*, 116 Cal. 239 . [48 Pac. 62], the court comments on the subject further as follows: "An examination of the authorities will show that the cases in which future profits were rejected as 'speculative' or 'too remote' were cases where the asserted future profits were entirely collateral to the subject matter of the contract, and not consequences flowing in a direct line from the breach of such contract. . . . But where the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered; and he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages. . . . Contracts for the purchase and sale of future crops running through a series of years have been recognized as valid." In *Rice* v. *Whitmore, supra,* the supreme court approved the giving of an instruction which allowed the jury to estimate the net value of a crop which had not been planted, and in the same case approved an instruction advising the jury that there could be no recovery for the loss of the labor of the plaintiff or for the use of his teams. Where the action for prospective profits on crops not planted is brought to trial after the years during which such crops might have been grown have passed, the available evidence to establish the net value of such crops is clearer in that the weather, market, and other surrounding conditions can all be shown to a certainty in the proof; whereas in a case where the evidence is based upon assumed future conditions the result is naturally and necessarily highly speculative. The court, as has been stated, allowed $781 for profit on the crop of alfalfa and barley. The item $286 allowed for preparation of ground not planted to crops is not shown to be the equivalent of

the net profit on all crops intended to be planted, except the hay and barley, for the court omitted to find what, if any, such net profit would have been, although the plaintiff alleged it. The profit might have been of a less sum, or there might have been no profit. Appellant insists, too, that only a portion of $286 is shown to have been expended or incurred on account of the work alleged, but, because of what has just been stated, the evidence need not be analyzed to that particular point.

In order to ascertain the net value of the crops planted which might have been grown during the year 1918, the total rental of $1,200 paid, together with other production and marketing costs, should have been deducted from the gross amount. **[11]** It was improper to make allowance of $600 for cattle and hog feed purchased, for the crop damage would compensate plaintiff for such expense.

**[12]** Appellant objects to the item of $2,610 allowed by the court as damages accruing on account of the difference between the value of plaintiff's hogs and the price obtained by him when he sold them in August, 1918. Plaintiff alleged in his complaint that, because of the failure to obtain water and feed on the land leased from the defendant, he was compelled to sell his "stock" and that the best price obtainable was $2,765, while the value of the property was $5,375. The evidence showed that plaintiff had for several years prior to the time he leased defendant's ground been engaged in the business of hog raising at his father's ranch in another county. He had acquired the lot of hogs in the course of that business and did not purchase them especially for the purpose of stocking the defendant's land. He testified that he took the hogs off the latter land on August 28, 1917; that he sold first a part of them, after advertising the sale, and removed the remainder, numbering about twenty, to another ranch, to the owner of which he finally sold them. From all that can be gleaned from the record, it would appear that the plaintiff obtained a reasonable market price for his hogs. The investment in the livestock was not induced by any dependence upon the prospect of securing the defendant's land and the water for irrigation, for the hogs had long before that been the property of the plaintiff, whose business, in part at least, was that of a hog breeder. So it cannot be said that the

loss under this item was directly attributable to the defendant's having breached his contract. Further than that it cannot be concluded from the evidence, for it is wholly short of establishing any such condition, that had the plaintiff been furnished the water which it was agreed should be furnished him, and consequently had continued in the hog-raising business, he might not have suffered by the sale of his stock in due course of that business precisely an equivalent amount of loss. Admitting that the evidence was sufficient to establish the value of the hogs at the time they were sold (which appellant contends it was not), the facts established were not sufficient to prove recoverable damage.

Appellant further contends that the item of $100 was not proven. The testimony as to that item admits of the reasonable inference that the defendant expended the money in hiring help to do the work. It admits also of the inference, taken in connection with the evidence on other branches of the case, that the outlay resulted in a loss properly chargeable as a damage resulting to the plaintiff.

For the reasons given defendant is entitled to a new trial as to the issues of damage.

The judgment is reversed as to all amounts of damage and costs allowed by the court; it is otherwise affirmed. The superior court is directed to retry all issues as to damages and to enter such a new judgment as the facts justify and as may be consistent with the conclusions herein expressed. Appellant will recover costs on appeal.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 3, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 4, 1922.

All the Justices present concurred.