[Civ. No. 136. Fourth Appellate District.—October 31, 1930.]

S. CAPPUCCIO, Respondent, v. O. M. TUFTS, Appellant.

Fred L. Hamblin for Appellant.

Halverson & Halverson for Respondent.

WARMER, J., *pro tem.*—This is an action by which a tenant seeks to recover damages for eviction by the landlord. The facts are as follows:

May 1, 1925, the plaintiff herein entered into a lease for an orange and lemon grove consisting of 28 acres, approximately one-half oranges and one-half lemons. The term of said lease was five years; the rental provided for in said lease was one-half of the crop; the tenant agreed to cultivate, irrigate, prune, etc., the trees in said grove and to pick the crop and deliver to the landlord his portion of the fruit on the premises or at the railroad station or at a packing-house, at the option of the landlord. The defendant purchased said grove some time in April, 1926, with knowledge of said lease; that at some time during his negotiations for said premises he told the plaintiff that when he secured title to the said property he was going to take possession of the premises; that plaintiff had already ruined the grove and that he would have nothing more to do with him. On May 6, 1926, after having secured title to said premises he, defendant, actually entered upon said premises and took possession thereof, claiming to have done so under a provision in said lease giving him the right so to do in case of the failure of the plaintiff to properly irrigate, cultivate, prune, etc., the said grove. The evidence is sharply conflicting as to the condition of the grove, quantity of the fruit on the trees and as to the value of the fruit. The cause was tried

by the court sitting without a jury. Appellant contends that the evidence is insufficient to support the findings.

The intendments are in favor of the judgment and if evidence in support of the findings be substantial, either with or without conflict, the findings are sufficiently supported. (*Hind* v. *Oriental Products Co.*, 195 Cal. 655 [235 Pac. 438]; *Shannon* v. *Tooker et al.*, 167 Cal. 484 [140 Pac. 107].)

In examining the sufficiency of the questioned finding this court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. (*Delannoy* v. *Quetu*, 73 Cal. App. 627 [239 Pac. 71]; *Menotti* v. *Marchesi*, 63 Cal. App. 49 [218 Pac. 439].)

The court found that the defendant (appellant herein) wrongfully and unlawfully entered upon said premises and wrongfully and unlawfully excluded the plaintiff from said premises to his damage in the sum of $600. The court's finding being adverse to the contention of the defendant as to the condition of the grove being such that he had a right to enter said premises under the terms of the lease and take possession thereof, it must be taken as conclusive that the condition of the grove was not such as to warrant the defendant in taking possession of the said premises and excluding the plaintiff therefrom. The evidence is sufficient to support the finding of the court that the plaintiff was excluded from said premises. It is necessary to point out only sufficient of the evidence to support such finding. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157].)

The plaintiff testified that between the 5th and 8th of May, 1926, he found the defendant on said premises at which time the following conversation took place:

"I (plaintiff) said 'What do you mean, you got no business here.' He said he had business here. He said 'I own this property' . . . I said 'You don't own this property' . . . 'You were not here the other day when I come down here and there was nobody here and I took the chance of going ahead and picking the fruit' . . . I said 'It was my money; it don't take your money to do all that work.' He said he didn't know anything about that. The place was

his and nobody was to be there but himself. . . . It didn't belong to me any more he said. . . . He said 'No, this is all mine. It don't belong to you. You will keep away from here.' " etc.

Joe Cappuccio, a son of the plaintiff, testified in that connection:

"Yes, my father said to him 'This crop there was raised by myself and at my expense and it belongs to me' and if he would allow my father to take this crop, if father would withdraw his lease and he says 'No, this belongs to me,' " etc.

The defendant himself testified that shortly prior to the time that he secured title he told the plaintiff "I told him I would take possession of it as soon as I got title and I did not expect him to have anything further to do with it as it appeared that he had practically ruined it."

From the testimony quoted, if believed by the trial court, it was apparent that the defendant had inspected the said premises and arrived at the conclusion that owing to what he saw there he would enter upon said premises and take possession thereof and from the admitted fact that he did so almost immediately after he became the owner thereof, it clearly appears that the defendant chose to do that which he told the plaintiff he intended to do. Such evidence is sufficient to support the finding that the defendant took possession of the property and excluded the plaintiff therefrom. The next finding to which the appellant urges insufficiency of evidence is that the evidence is insufficient to support the finding of damage in the sum of $600.

 Where a tenant who is lawfully in possession of the premises is evicted therefrom he may recover damages.

In *Klein* v. *Lewis*, 41 Cal. App. 463 [182 Pac. 789], the court said:

"When the lessor by an illegal act materially disturbs the possession of his tenant, which he should protect and defend, the latter may abandon the premises leased, and recover damages. (Citing cases.)"

In *Saferian* v. *Baer*, 105 Cal. App. 238 [287 Pac. 142], the court said:

"Where a tenant who is lawfully in possession of the premises is evicted from them he may recover damages."

An eviction entitles a tenant to recover any damage he may have sustained. (*Schumann* v. *Karrer*, 184 Cal. 50

[192 Pac. 849]; *Hamer* v. *Ellis,* 40 Cal. App. 57 [180 Pac. 30].)

We think the evidence is sufficient to support, the finding of the damage as found by the trial court that the same proximately resulted from the eviction. When a tenant on an orange ranch cares for the same, irrigates, cultivates, prunes and does such other things as are necessary for the proper care of a grove and matures a crop of fruit on orange and lemon trees in a grove, he does so with the expectation that he will receive as compensation for his labor and expenditure in the production of said fruit the reward that is evidenced by the value of the fruit. Where one comes in and takes possession of the premises and takes the crop of fruit, it would hardly be contended that the loss of the crop to the plaintiff was not proximately caused by his eviction from the premises, and where one wrongfully takes a crop so produced, certainly it is to the damage of the person from whom the crop is taken. Of course, the *quantum* of the damage does not run as to the whole crop because in the instant case the landlord was entitled to one-half of the crop under the terms of the lease. The damage would therefore run only as to the value of one-half of the crop, from which must be taken the cost of maturing (in this instance nothing) and harvesting and delivering the said crop as in the lease provided. The loss of the value of the crop being proximately caused by the wrongful eviction, it becomes necessary to determine what was the value of the crop of fruit at the moment of eviction. At that time the fruit was on the trees and we think the evidence is sufficient to sustain the finding of a damage of $600.

The plaintiff testified that he had been a rancher over a number of years; that the fruit was in first-class condition in April, 1926, set heavy on the trees; he estimated the trees would produce at least one box each; that there were 2,400 trees, including both oranges and lemons.

Joe Cappuccio, his son, testified that he was familiar with the handling of orange and lemon properties and that 'he had worked on this property for a considerable length of time shortly prior to the eviction; that he had observed the orange and lemon trees and was able to judge the quantity of fruit thereon and that in his opinion the oranges would

average better than a box to the tree, while the lemons would average two boxes to a tree.

A witness, Montgomery, testified that he lived about a mile from the premises in question, was acquainted with the property, had been for a number of years; that he was an experienced man in orange culture, both as an owner and a worker, over a period of about 18 years, and was acquainted with the condition of the trees on this grove in the spring of 1926; he estimated the yield at about a couple of boxes at least, per tree.

Another witness, Raymond, testified that he was in the fruit buying and selling business with 13 years' experience; that he examined the orchard; had not estimated it exactly, but would figure it about a box to a tree or maybe a box and a half; the quality was not first class but was marketable; as to the lemons that they were not first class but were marketable; that. he was familiar with the market price of oranges per box in April, May, June and July, 1926; that they ran all the way from $3 to $4 per box; that the quality was not very fancy, but they would be second grade; that the market price of the second grade fruit was about $3 per box; that the cost of picking 6c to 10c a box, cost of hauling 15c a box and cost of packing 75c a box for oranges; that the net to the grower of such oranges on this grove would be approximately $1.90 a box.

The grove being approximately equally set to oranges and lemons there would be 1200 orange trees. Under the evidence each tree would produce one box of oranges; there would be 600 boxes of oranges to be delivered to the lessor and 600 boxes for the lessee. However, under the terms of the lease it was the duty. of the lessee to pick, haul and pack ready for delivery to the lessor, his portion of the crop. Under the evidence such picking, packing and hauling charge was 90c per box or $540 for 600 boxes. Under the evidence the net to the grower was $1.90 per box or $1140 for 600 boxes. Hence the plaintiff would receive $1140 for his portion of the crop of oranges, but such sum would be charged with $540, which would be the cost to him under the terms of the lease, for picking, hauling and packing the one-half of the crop of oranges that was to go to the lessor as rent. The balance would be the net of the whole transaction to the lessee or the sum of $600 found by the court. This does not

take into consideration the evidence that the lemons were marketable. The evidence sufficiently supports the finding.

There was no evidence offered as to any other or further damage as a result of the eviction. The evidence being sufficient to support the findings the judgment must be affirmed.

Judgment affirmed.

Marks, Acting P. J., and Barnard, J., concurred.