[Civ. No. 340. Fourth Appellate District.—January 26, 1931.]

FANNY HIGGINS, Appellant, v. J. C. GRANT et al., Respondents.

Alfred Siemon, Paul F. Garber, Jackson Mahon and Siemon & Garber for Appellant.

Anderson & Anderson and A. G. Ritter for Respondents.

BARNARD, J.—This is an action for damages for breach of contract. The plaintiff was the owner of 160 acres of land in Kern County, acquired under an agricultural patent which reserved the oil rights to the government. She was also the owner of a "Prospecting Permit" issued by the department of the interior, giving her the right to prospect for oil or gas on this same property. As first party, she entered into an agreement with one J. C. Grant, as second party, which agreement was later assigned by Grant to Julian Petroleum Corporation. This agreement, after reciting that the first party is the owner of the surface rights in the property, and also of a prospecting permit issued by the Secretary of the Interior, provides that the second party shall drill a well on said premises to a depth of not less than 3,000 feet, unless oil in paying commercial quantities is discovered therein at a lesser depth. In the event oil is discovered in paying quantities, the second party agrees to provide the first party with all necessary affidavits and proofs to enable her to obtain a lease to said land from the Secretary of the Interior, and the first party agrees to then obtain such a lease from the Secretary of the Interior, and assign the same to the second party. Thereafter, the second party is to pay to the first party a royalty of five per cent of any oil and gas produced from the land.

The Julian Petroleum Corporation commenced to drill a well on the property but, after going down 562 feet, abandoned the project. The evidence shows that the plaintiff's land was near a proven oil-field, there being many producing wells about two and one-half miles distant, in one direction; that about the same time, at least three other wells were drilled within one and one-half miles of plaintiff's land,

some of them showing some oil but none of them being put on production; that two other wells were drilled and abandoned in the neighborhood, although their distance from plaintiff's land is not set forth; and that the well begun on plaintiff's land lay between two dry holes, one of which, one and one-half miles away, showed some oil but was not put on production, while the other, known as the Miller well, one mile away, was drilled to depth of 4,360 feet but never put on production. Two geologists expressed an opinion that oil could not be produced on plaintiff's land, although both had thought the chances were favorable at the time the contract here in question was executed. One said it took the Miller well to determine the possibilities of the plaintiff's land and the other testified that he had changed his mind because of another drilling operation in the vicinity. It was stipulated by the parties that the cost of completing the well on plaintiff's land to depth of 3,000 feet would be $50,000. The case was submitted to the trial judge, without a jury, on this stipulation and on certain written testimony. The court found that the defendants had breached the contract by refusing to drill the well to the agreed depth, and that the cost of completing the well would be $50,000, but further found that the plaintiff had suffered no detriment from the breach of the agreement, and entered judgment for the defendants. From this judgment the plaintiff has appealed.

The appellant raises but one question, which, in the language of the brief, is thus stated: "Is the cost of doing the work the proper measure of damages for breach of this contract? If it is not, for any reason at all, whether it has been stated or not, then the judgment should be affirmed." It is argued that the work having been fully paid for in advance, the cost of completing the well is the measure of damages. In support of this contention, appellant cites certain California cases, which we will now consider. In *Taylor* v. *North Pacific Coast R. Co.*, 56 Cal. 317, the plaintiff had deeded a right of way across his land to a railroad company upon the agreement that the company should build for him a certain wagon road in lieu of another road destroyed, and should build fences on both sides of the right of way. The court held that the plaintiff had fully paid for the road and the fences, and was entitled to recover

what it would cost to construct them. In *Wallace* v. *Ah Sam*, 71 Cal. 197 [60 Am. Rep. 534, 12 Pac. 46, 48], which involved an agreement to build certain levees to reclaim land, although the court discussed the measure of damages which ordinarily would apply for the breach of a contract to construct such an improvement, the case was decided upon the ground that the plaintiff was not entitled to recover loss of profits from a lease executed without the defendant's knowledge, after a breach of the contract had already occurred. In *Fabian* v. *Lammers*, 3 Cal. App. 109 [84 Pa. 432], certain parties owning adjoining lands had agreed that each would build a levee across his particular land, the entire project being to the mutual advantage of all. The plaintiffs built their part, but the defendant failed to build his. His portion being necessary to the success of the whole plan, after notice, the plaintiffs filled in the gap across the defendant's land. The court held that the plaintiffs had paid in full by building their respective portions, and that they were entitled to recover the cost of doing what the defendant had agreed to do, under the rule laid down in *Taylor* v. *North Pacific C. R. Co., supra*. In *Turner* v. *Howze*, 28 Cal. App. 167 [151 Pac. 751], the defendant agreed, in connection with a subdivision proposition, to put in certain street improvements. He failed to do so, and the court held the measure of damages was the cost of doing the work. It appears that the plaintiff had fully performed and had nothing more to do, so far as the defendant was concerned.

While appellant concedes that the rule contended for has in no California case been applied to a contract for the drilling of an oil-well, she cites certain cases from other states, in support of her theory that this measure of damages applies to such a contract, which cases we will now consider. In *Ardizonne* v. *Archer*, 72 Okl. 70 [178 Pac. 263], it was held that the measure of damages for the breach of an agreement to drill an oil-well to a certain depth, under the facts and circumstances of that case, was the cost of doing the work. It appears that the plaintiff had already delivered to the defendant a lease to the land in question, and nothing remained to be done by him. The court said the situation was analogous to a contract to build a house, where the other party has been paid in advance. In *United*

*States Fidelity G. Co.* v. *Gray*, 106 Okl. 222 [233 Pac. 731], the court applied the same rule, under the facts and circumstances there existing. One circumstance was that the plaintiff, before the work was begun, had executed and delivered leases of the land to the defendant, who, in turn, had sold some of them to other parties. In *Okmulgee* v. *Baugh*, 111 Okl. 203 [239 Pac. 900, 902], a similar rule was followed. The court said: "The object of the contract was to put down two test wells for oil and gas in 'Wildcat' territory. For this purpose the assignments of the leases were made. The defendant received full pay to put down the test wells." In *Fraley* v. *Wilkinson*, 79 Okl. 21 [191 Pac. 156], the court states that where lots were deeded to the defendant in consideration of some cash and an agreement to erect a brick building thereon, in order to benefit other lots owned by the plaintiff, the measure of damages would be the cost of the building, the consideration having been fully paid. In *Knupp* v. *Bright*, 186 Pa. St. 181 [40 Atl. 414], the plaintiff agreed to assign his interest in a certain lease to the defendant who agreed to drill an oil-well on the property. The trial court instructed the jury to find for the defendant, if they found that the assignment of the lease had not been delivered, but if they found the assignment had been delivered, they should find for the plaintiff, for the amount it would cost to do the work. On appeal, this instruction was approved. Appellant also cites *Johnstown R. Co.* v. *Egbert*, 152 Pa. St. 53 [25 Atl. 151], *Gibson* v. *Oliver*, 158 Pa. St. 277 [27 Atl. 961], and *Mollohan* v. *Patton*, 110 Kan. 663 [202 Pac. 616, 205 Pac. 643], none of which are of assistance here; the first two being actions to recover rent agreed to be paid, and the last being an action to recover damages for failing to reconvey leased land, and definite damages were proved.

In *Wallace* v. *Ah Sam, supra,* the court states the general rule as follows: "Ordinarily, the measure of damages for the breach of a contract to construct a levee, a fence, or any similar work is: 1. If payment has been made, the cost of constructing the work; 2. If payment has not been made, the excess of the cost of the work over the contract price."

Assuming, but not deciding, that the rule ordinarily applied to contracts for the construction of houses, levees, fences, etc., that the measure of damages is the cost of do-

ing the work, is applicable to contracts for the drilling of oil-wells, this rule applies only where full payment has been made in advance. If payment has not been made in advance, as pointed out in *Wallace* v. *Ah Sam, supra,* the measure of damages is the excess of the cost of the work over the contract price, or, if part of the contract price has been paid, as pointed out in 8 California Jurisprudence, 832, the measure of damages is the excess of the cost of completing the work over the unpaid portion of the contract price. It will be noted that in all of the cases relied upon by appellant, as above referred to, the full contract price had been paid by the plaintiff and nothing remained for him to do.

The appellant here rests her entire case upon the ground that she had paid in advance, all of the compensation which respondents were to receive for drilling the well, and that under the authority of the cases cited, the measure of her damages is the cost of completing the work, the amount of which is not in dispute. Our first question then, is whether appellant had, in the instant case, fully paid for the work in advance. Appellant argues ''Had she made a contract with respondents to pay a certain sum of money in cash for a well to a depth of 3000 feet, and paid them the cash in advance, there could not be the slightest doubt as to the legitimacy of the contract; and if they had thereafter failed to drill the well she could have recovered damages, and the measure of those damages would be, not the price paid, but the cost of doing the work.'' She also argues that the only compensation respondents were to receive for drilling the well, consisted of the right given them to enter upon the land and prospect for oil—of her agreement to obtain a lease from the government after the discovery of oil, and assign the same to respondents—and of her agreement that respondents might then take all oil or gas produced on the land, after paying the government rentals and her royalty. It is argued that by these agreements upon her part, appellant had fully paid and compensated the respondents for the work they were required to do.

There is a wide difference between agreeing to do something, and doing the same. Agreeing to pay a fixed sum for erecting a house would hardly be considered full payment in advance. Paying in advance a fixed sum for drilling a well

3,000 feet deep, as referred to in the illustration used by appellant, is quite different from agreeing that after such a project is completed, if a certain result is obtained, payment will then be made by obtaining something from a third party, and then conveying it to the party doing the work. In each of the oil cases from other states cited by appellant, it will be observed that the court particularly points out that the plaintiff had either deeded the land or assigned a lease to the other party, in advance. In each of those cases, the plaintiff had done everything he was to do, in other words, had fully paid. In the instant case, while the appellant agreed to do certain things, these were not done in advance, and much remained for her to do. She did not even agree to compensate respondents for drilling by giving them a lease to the land. She only agreed to do this in the event certain results should be obtained. The results never having been obtained, she was neither required to nor did she deliver to them any such lease. If respondents had performed and if successful results had been obtained, the contract would then have called for further compensation to them. Like an owner who agrees that if a building is built, and if it proves successful for a certain purpose, he will secure the money from a third party and pay it to the builder, this appellant agreed that if the well should be drilled and should prove successful, she would obtain a lease from the government, and would assign the same to respondents, thereby compensating them for the work done. In effect, this contract provides that if the work is not done or is unsuccesful, appellant does not have to pay, but if it is done and is successful, she is to pay by securing and assigning to the respondents, what would then be a valuable lease. This presents a different situation from the cases cited by appellant, where nothing remained to be done by the plaintiff, not even so much as a scratch of a pen, and where the defendant had received all that he was ever to receive from the plaintiff, whether the results were successful or not. We conclude that, under the facts and circumstances shown here, the appellant had not paid in advance for the drilling of this well. For the reason that the facts show that the respondents had not been fully compensated in advance for the work to be done, we think the rule contended for does

not apply, and that the measure of damages in the instant case is not the cost of completing the work. If we are correct in this, under appellant's statement in raising the point, the judgment should be affirmed.

If, as appellant contends, a contract for the drilling of an oil-well comes under the same rules of law as govern building and construction contracts, then, under those rules, as above stated, the measure of damages in the instant case would be the excess of the cost of completing the work, over the unpaid portion of the purchase price. While the cost of completing the work mentioned was stipulated to by the parties and found by the court, the record contains no evidence from which a court could determine what portion of the contract price remained unpaid. There is no evidence as to what was the value of the right presently given by the contract in question, being the part of the compensation paid in advance, nor what was the value of the lease to be secured and assigned to respondents, being the portion that was not paid in advance. And this last item would vary according to whether or not the results were successful. The apparent difficulty of securing such evidence is indicative of the speculative nature of this undertaking. Not only was there no evidence before the court to justify an award of damages upon that basis, but the appellant recognizes how any such element of damages, under the circumstances of this case, would run into the speculative, uncertain and remote, when after discussing the general matter of damages, she says: "The foregoing considerations, and other rules not especially noticed, exclude every other measure except cost of drilling." For that reason, apparently, appellant's entire case has been based, both at the trial and upon this appeal, on the theory that the measure of damages contended for, was and is applicable to the facts of this case. Whether or not any damages could have been shown by appellant, in the absence of a provision in the contract providing for liquidated damages, nothing appears in the facts before the trial court, as shown by the bill of exceptions, which would have justified other than nominal damages. Not only should the case not be reversed because of the failure of the trial court to find in favor of the plaintiff for nominal damages only (*Liljefelt* v. *Blum*,

33 Cal. App. 721 [166 Pac. 384]) but appellant, in her statement above quoted, has waived any such reversal.

For the reasons herein stated, the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 17, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.