[Civ. No. 4779.   Third Appellate District.—February 2, 1934.]

F. A. LANDON, Respondent, v. THEO. K. HILL, Appellant.

Norman A. Eisner and J. A. Pardee for Appellant.

Jesse W. Carter and Glen D. Newton for Respondent.

PULLEN, P. J.—This is an action for damages for eviction brought by a lessee. Theo. K. Hill was the owner of certain premises consisting of a store and certain bakery equipment in the town of Anderson, Shasta County, California, where he had for some time carried on a bakery business.

On June 1, 1931, he leased the premises and equipment to plaintiff for a period of two years from June 1, 1931, for $40 per month for the purpose of conducting a bakery. On the same day plaintiff executed and delivered to Hill two promissory notes, one payable December 1, 1931, for $120 to cover the first and last two payments of rent under the lease, and a note in the sum of $260 payable in installments of $50 per month to cover the purchase price of certain bakery stock then taken over by plaintiff from defendant.

Plaintiff entered into possession of the bakery on June 1, 1931, and remained in possession until August 24, 1931, at which time defendant again re-entered.

Plaintiff, claiming he was evicted and his stock of merchandise converted, brought this action against his lessor, defendant herein, and recovered a judgment of $4,500 as damages for the eviction and $174 as damages for conversion.

This appeal is from that portion of the judgment only awarding damages for eviction. ■ Appellant, as grounds of his appeal, contends that the facts did not support an eviction and that the damages awarded are excessive. The finding of the trial court as to the eviction was to the effect that while plaintiff was in the quiet and peaceful possession of the premises and property pursuant to the written agreement, defendant forcibly, maliciously, wrongfully, wilfully and unlawfully evicted plaintiff therefrom and took and withheld possession from plaintiff.

In examining into the sufficiency of the evidence to support a questioned finding, it must be borne in mind, as is stated in *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157, 1158] : "An appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding."

Examining the record, then, in the light most favorable to respondent's position, the record discloses that respondent was in possession of the premises on July 24, 1931, under a lease which contained a provision that the lessee had thirty

days to pay the rent after it became due before lessor could re-enter and take possession. The rent for June had been paid by the note covering the rent for the first and last two months of the lease. The rent for July had been paid July 18th, and it is therefore apparent that respondent was not at any time in default in payment of rent.

It is the claim of appellant, however, that plaintiff voluntarily surrendered the premises and there was not therefore an eviction. "It is an eviction", as defined in 36 Corpus Juris, page 259, "if the landlord without the tenant's consent, enters and takes possession of the demised premises or any part thereof during the continuance of the lease and excludes the tenant therefrom".

To determine whether the court was justified in holding plaintiff was actually evicted, it will be necessary to set forth in some details the facts adduced at the trial.

After plaintiff took over the control and operation of the bakery in Anderson, defendant moved to Susanville. During the month of July, Mr. Exley, a baker of Chico, came to Anderson at the invitation of Mr. Hill and with Mr. Hill looked over the bakery with a view of leasing it. Mr. Exley was then told by defendant that he, Mr. Hill, would have to do something about the business as Landon had not been making the payments on the lease and a note, and that he was going to re-lease it, and if he, Exley, wanted it he could have it. On August 23d, Exley again went to Anderson after receiving a telephone message from defendant, saying: "Everything is all right—come ahead and take hold of it (the bakery) to-night." On August 22d, as Mr. Hill was on his way from Susanville to Anderson he informed Mr. J. M. Layton, a service station operator, that Landon was behind with his rent and that a baker who operated the Queen Ann Bakery in Chico wanted to take over the lease. Upon his arrival in Anderson, defendant called upon the father of plaintiff and told him that plaintiff "is not paying—he won't pay and I have asked him time and time again and he don't; so I will have to take it away from him". About 4 o'clock Sunday, August 23d, plaintiff and defendant had a conversation at the bakery. With Hill at that time was Mr. and Mrs. Exley and Mr. and Mrs. Warren. Mr. Warren was a salesman for a yeast company in San Francisco, who had at one time sold supplies to plaintiff but

plaintiff was not at that time dealing with that company. Mr. Warren testified he was there in response to a telephone request from Hill to be present at that time to witness putting Landon out of the bakery. At that meeting on Sunday, Hill told plaintiff that he was in default of the payment of rent and that he had come to take possession. Plaintiff replied that he was not in default and that the lease provided he could have thirty days' grace but that he was tired and wanted to go home. The next morning plaintiff sent an employee to the bank to make a payment on the note and pay the rent for the current month but the bank refused to accept the payment without the consent of Hill. Landon then tendered to Hill $40 for the rent and $50 installment on the note but Hill refused to accept either payment. He then told Landon he was taking possession of the bakery and that he had talked with his attorney and knew what he could do,—that he could enter the building at any time even to breaking a door or window to do so. Landon replied he himself had not seen an attorney but he certainly would if he were put out. Hill demanded the keys, which Landon refused to surrender. They then at Hill's suggestion went to the bank where a Mr. Black, who had drawn the lease in question, was in charge. Landon asked Black if Hill could put him out of the bakery and Black said it was O. K. Black then prepared a receipt for the keys and stock in trade which Hill and Landon signed. The keys were at the bakery. Upon their return Landon took the key from the ring and placed it on the desk, saying to Hill: "There they are but I am not giving them to you." Landon then left the bakery. He got his copy of the lease and asked Judge Shanahan of the local justice's court what were his rights under the lease but Judge Shanahan refused to advise him and told him to consult his attorney. He then went to Red Bluff and visited his wife who was confined in a hospital on account of illness, and acting upon her suggestion, returned to the bakery to get his personal belongings and take an inventory of the stock. Upon returning to the shop he there met Mr. Exley, who had returned to Chico the day before but had returned to Anderson upon receiving a telephone call from Hill that afternoon to come to Anderson to take over the bakery. While there, Landon

sold to Exley the linoleum and certain of his personal property in the shop.

The foregoing is a *résumé* of the evidence found in the record tending to support the finding of the trial court that plaintiff was evicted, and an analysis thereof justified the conclusion of the trial court that the surrender was not voluntary but that plaintiff was evicted. It will be observed that Landon notified defendant at the first meeting on August 23d, when defendant told him he had come to take possession of the bakery, that he could not take possession because he was not in default. On the following day plaintiff attempted to pay the rent for August and remove the objection of the defendant, and when defendant refused the tender and again told him he was going to put him out Landon said, "Well, you can't put me out of here," and further on the same conversation said, "Well I have not had a chance to talk to my attorney yet but if you put me out of here I will certainly talk to an attorney". As a further indication of Landon's unwillingness to surrender the premises, he said to defendant, "I told him it would put me in an awful pickle if I lost the bakery. I was in a pretty bad situation right then and I had to have an income . . . " At that time Hill demanded the keys, with which request plaintiff refused to comply, and it was not until they had gone to the bank and Mr. Landon had been advised by Mr. Black, the banker who had prepared the lease, that Hill could retake possession, that he signed the receipt for the keys and merchandise. Later in the same .evening, as they were taking stock in the bakery, Mr. Hill demanded that certain money in the till be returned, at which time Landon said to him, "Ted, I don't want to hit you but if you don't shut up and leave me alone I will."

It is further argued by respondent that if the evidence adduced on the part of the respondent does not justify the finding of an actual eviction it nevertheless justified the finding of a constructive eviction, for "a constructive eviction may arise from the improper conduct of the landlord from interfering with the beneficial enjoyment of the premises, such as threats of expulsion, attempts to lease to others, unreasonable demands, insults or assaults". (36 Cor. Jur., p. 267.) We are of the opinion, however, that the evidence

justified the trial court in construing the acts of defendant as constituting an actual eviction.

■ The second major point urged by appellant is that the court erred ·in the measurement of damages, and that the award of $4,500 is excessive. The finding of the trial court was that as a result of the eviction plaintiff was prevented from operating the bakery business, that he had lost the custom and patronage of many customers, and had suffered and would continue to suffer the loss of profits from the business which he would have made and earned had he been allowed to continue in possession for the balance of the unexpired term of the lease, to wit: Twenty-one months and seven days after August 24, 1931; and that by reason of the eviction plaintiff had been deprived of the leasehold rights to which he was entitled under his agreement. Then without segregating the damages, the court finds, ''that by reason of the premises said plaintiff has been damaged in the sum of $4,500.00''.

While true, this finding of damages is general and it does not appear what elements the court considered in ascertaining the amount of damages, it is sufficient in form to support a judgment in the absence of a request for a more specific finding. (*Murphy* v. *Stelling,* 8 Cal. App. 702 [97 Pac. 672].)

An eviction entitles a tenant to recover any damage he may have sustained. (*Cappucio* v. *Tufts,* 109 Cal. App. 277 [293 Pac. 91]; *Schumann* v. *Karrer,* 184 Cal. 50 [192 Pac. 849]; *Hamer* v. *Ellis,* 40 Cal. App. 57 [180 Pac. 30].)

■ The general damage of an evicted tenant is the difference between the actual fair market value of the unexpired term at the time of the eviction and the rent reserved; in other words, the difference between the present rental value and the agreed rent. The tenant's recovery is not limited, however, to the value of his leasehold interest. Independently of the general damages ordinarily recoverable the tenant may recover special damages naturally and proximately resulting from the eviction. (36 Cor. Jur., p. 283.)

■ In the instant case it appears from the finding that the court considered damages for goodwill, loss of profits and the value of the leasehold. It is apparent that to award damages for the value of the lease and also for the loss of profits while occupying the leased premises is in the nature

of a duplication. (*Poposkey* v. *Munkwitz*, 68 Wis. 322 [32 N. W. 35, 60 Am. Rep. 858].) As was said in *McCready* v. *Bullis*, 59 Cal. App. 286 [210 Pac. 638], wherein the lessee sued for damages for loss of profits by reason of breach of covenant on the part of the lessor to supply water: "If he (lessee) was entitled to a recovery as for profit on crops, that profit would mean net profit, to produce which there should be deducted as a charge against the plaintiff all sums expended in the production or attempted production of the same, including rental and the reasonable cost of bringing the crops to maturity and marketing them. To allow to the plaintiff recovery of rental in such a case is to allow him more than a net profit on crops; in other words, it allows to him a net profit plus the rental paid. It requires no argument to show that such a judgment cannot be justified."

Inasmuch, however, as the excess rental value of the premises over the rent reserved is found to be at the rate of $10 per month for the remaining twenty-one months, that error can be corrected by remitting $210 from the $4,500 awarded by the court. (*Wendt* v. *Smith*, 50 Cal. App. 234 [194 Pac. 736].)

Appellant also contends that the business here in question was not an established business and it was error for the court to award damages which included loss of prospective profits. It is true if a business is unestablished, the anticipated profits are held to be remote, uncertain and speculative as there is no ground upon which a satisfactory statement of loss can be made (8 Cal. Jur., p. 777), but here the bakery had been operated for several years, and while Landon, the plaintiff herein, had been personally conducting the bakery but a little over two months, still the income for several years previously was before the court, and the record of plaintiff herein during his occupancy was about the general level for the preceding years and it gave, therefore, a satisfactory basis upon which to calculate the damage. (*Lambert* v. *Haskell*, 80 Cal. 611 [22 Pac. 327]; *Schumann* v. *Karrer*, *supra*.)

Nor is the contention that Landon should establish facts in mitigation of damages tenable. It is true that the record does not establish the fact that the town of Anderson is a small community and that probably the Anderson

bakery was the only building in town furnished and equipped to carry on a bakery, yet it is evident that his eviction and the conversion of his stock and equipment would interrupt the course of his business to a material extent. Furthermore, the burden of proof to show matters in mitigation, if any, rested upon defendant. (8 Cal. Jur., p. 897; *Marconi W. T. Co.* v. *North P. S. Co.*, 36 Cal. App. 653 [173 Pac. 103]; *Hancock* v. *Board of Education*, 140 Cal. 554 [74 Pac. 44].)

The last point urged by appellant as to the excessive amount of damage is that plaintiff and the court in computing the expenses of operating the bakery from which to determine the net profits realized, did not deduct anything by the way of salary to Landon himself, although he was the baker and carried on the business principally through his own efforts.

It seems apparent that this was error. The value of the labor was independent of the lease and formed no part of the profits of the lease. If appellant had employed a baker his wages would have been deductible as an expense. In other words, the profit to be recovered is the net profit, to ascertain which, all sums expended in producing the crop or conducting the business, including rent and reasonable cost of marketing, are to be considered. (*McCready* v. *Bullis, supra; Rice* v. *Whitmore*, 74 Cal. 619 [16 Pac. 501, 5 Am. St. Rep. 479].)

Therefore, in order to determine the profits of the business done by plaintiff, the item of labor, whether performed by himself or others, must be taken into consideration. The only evidence in the record as to the value of the services of plaintiff is an offer by defendant to employ him at the rate of $20 per week, which offer plaintiff rejected. We may assume then that defendant considered plaintiff worth that amount. If we may use that as a basis of calculation, the award should be reduced by that amount. It is the claim of the plaintiff that the damages sustained would justify an award even greater than that allowed and contends that the court not having segregated the damage it cannot be said that any error was made therein; but in the findings supporting the judgment it is apparent the court gave the elements that made up the amount awarded, and

those included loss of goodwill, loss of patronage, loss of profits and loss of leasehold.

Eliminating the amount found to be the value of the leasehold, and deducting the value of the services rendered by plaintiff, the judgment can then be upheld.

The judgment is modified by striking therefrom the sum of $210, being the value of the leasehold, and also the value of the personal services of plaintiff at the rate of $20 per week for the period of the lease from the date of eviction to the date of expiration.

As so modified the judgment is affirmed, each party to bear his own costs.

Plummer, J., and Thompson, J., concurred.