[Civ. No. 20167.   First Dist., Div. One.   Aug. 27, 1962.]

VIRGINIA JANE BISNETT et al., Plaintiffs and Appellants, v. SAMUEL EARL HOLLIS, Defendant and Respondent.

Thomas N. Healy and Paul E. O'Hara for Plaintiffs and Appellants.

Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Defendant and Respondent.

BRAY, P. J.—Plaintiffs appeal from an adverse judgment based upon jury verdict.

### QUESTION PRESENTED

What is the effect of a verdict finding in favor of plaintiffs and against defendant and awarding damages as follows: ". . . in the sum of $ NONE"?

### RECORD

Plaintiffs' complaint alleged negligence and sought damages in favor of plaintiff Virginia for personal injuries alleged to have been sustained by plaintiff Virginia, for damages in favor of plaintiffs Virginia and Roy for medical expenses, and in favor of plaintiff Roy for damage to his automobile and for loss of use thereof. Defendant denied negligence, charged

contributory negligence, and cross-complained for damage to his bus.

The action arose out of a collision between plaintiffs' car driven by Virginia and a bus driven by defendant at the intersection of Pennsylvania Street and Sonoma Boulevard, in the City of Vallejo. Plaintiff[1] was proceeding easterly on Pennsylvania Avenue. The defendant was driving his bus southerly on Sonoma Boulevard. Sonoma is protected by stop signs at the entrances to it on both sides of Pennsylvania. There are no stop signs on Sonoma at this intersection. Plaintiff contends that she stopped at the stop sign on her side of Pennsylvania, and saw defendant's bus stop at the northerly line of Pennsylvania. She then proceeded into the center of the intersection where she stopped on seeing a car driven by Homer Wade approaching on her right. Just as Wade waved to her to proceed, she was hit by defendant's bus. Defendant contends that plaintiff ran through the stop sign and hit his bus.

Plaintiff claimed certain injuries as a result of the accident. Under the evidence, the jury could have found defendant guilty or not guilty of negligence proximately causing the accident or could have found plaintiff guilty or not guilty of contributory negligence proximately contributing to the accident.

The court gave the jury four forms of verdicts, one in favor of each side as to the complaint, and one in favor of each side as to the cross-complaint. After six hours of deliberation, the jury returned the following verdict: "We, the Jury in this case, find a verdict in favor of the plaintiffs and against the defendant and award damages as follows: to VIRGINIA JANE BISNETT in the sum of $ NONE. To ROY V. BISNETT in the sum of $ NONE." Neither of the cross-complaint verdicts was returned, nor was the verdict in favor of defendant on the complaint returned. The jury was polled on the verdict as returned. Ten jurors answered that it was their verdict, two that it was not.

When the verdict was returned the court stated in effect that the verdict in spite of its form was for defendant on the issues raised by the complaint. Plaintiffs' counsel stated that he thought that the form of verdict used, the conversation between defendant's counsel and the court, and the verdict as returned, required the court to declare a mistrial. The court then suggested that the parties stipulate that the jury could

---

[1]The single word "plaintiff" refers to Mrs. Virginia Bisnett, the driver of the car.

be "sent back to reform that matter *using the other form.*" (Emphasis added.) Defendant's counsel pointed out that there was no verdict on the cross-complaint. The court then said, "I can't grant anything or take away anything. . . ." and later, "Without a stipulation, I will let it stay as it is." The court denied plaintiffs' motion for a mistrial and ordered judgment entered for defendant.

## THE VERDICT

Plaintiffs contend that the verdict was "informal or insufficient" within the meaning of section 619, Code of Civil Procedure, and that the court committed error in allowing it to stand and also in denying the motion for new trial based mainly upon this contention. Defendant contends and evidently it was the belief of the trial court that in spite of its form, the verdict was a defendant's verdict. It would have been a very simple thing for the court, without taking any position as to which party the jury should decide for, to explain the forms of the verdicts, instruct the jury to return to the jury room and use the forms necessary to more clearly express its decision. However, the judge did not do that.

As hereinbefore set forth, the verdict found in favor of the plaintiffs. This meant, of course, that the jury found the defendant guilty of negligence and the plaintiff free from contributory negligence. But, if this is so, why no damages? Defendant's answer is that the jury thereby determined that although defendant's actions were the sole cause of the accident plaintiffs did not receive any injuries or sustain any damage as a result of the accident. Such interpretation was placed upon similar verdicts in the following cases: In *Vogt* v. *McLaughlin* (1959) 172 Cal.App.2d 498 [342 P.2d 481], the defendant admitted liability. Accordingly, only one form of verdict was submitted to the jury, in favor of the plaintiffs, bearing a blank to be filled in for the amount of the award to each plaintiff. The jury returned this form bearing the word "none" in each blank. The court held: "The form of the verdict indicates that the jury recognized the responsibility of defendant, but concluded that his negligence had not proximately caused any injury to plaintiff." (P. 502.)

In *Chaparkas* v. *Webb* (1960) 178 Cal.App.2d 257 [2 Cal. Rptr. 879], one of the verdicts rendered by the jury held: " 'We, the jury in the above entitled action, find for the plaintiff, Peter Chaparkas, and assess his damages in the sum of $ None. . . .' " (P. 259.) The court characterized this

verdict as one finding that the plaintiff "had sustained no injuries or damages proximately caused by or resulting from the negligent acts of defendants in the accident in question." (P. 259.) The plaintiff contended that the verdict was contrary to the evidence so as to require a finding of damages in his favor. The court pointed out that the burden placed on a plaintiff to prove that his injuries, if any, were proximately occasioned by the negligence of the defendant is in nowise lessened by his presentation of a prima facie case of negligence against the defendant and that the jury, however, is the sole judge of the " '. . . credibility of the witnesses (Cal. Code Civ. Proc., § 1847; see cases cited in 27 Cal. Jur. 182, § 156) and is free to disbelieve them even though they are uncontradicted if there is any rational ground for doing so. [Citing cases.] In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference. [Citing cases.] . . . In passing on the credibility of a witness, the jury is entitled to consider his interest in the result of the case. . . .'

"Even should we assume that the foregoing evidence would have justified an award of at least nominal damages the judgment herein should not be reversed simply to permit such a recovery. (*Higgins* v. *Grant,* 111 Cal.App. 351, 358 [295 P. 532]; *Liljefelt* v. *Blum,* 33 Cal.App. 721, 722 [166 P. 384].)" (P. 262.)

In *Morseman* v. *Mangum* (1960) 177 Cal.App.2d 218, [2 Cal.Rptr. 67], the jury found a verdict in favor of one of the plaintiffs and assessed damages in the sum of "None" dollars. Just as do plaintiffs in our case, the plaintiff there urged that the verdict was incomprehensible because the jury awarded $417 damages to the driver of the truck in which the plaintiff was riding, and awarded the plaintiff nothing, although his medical expenses were $205. The court held that the verdict, by its form, was a finding that the defendant was negligent but that the plaintiff had suffered no damage. The court pointed out that at the scene of the accident, the plaintiff, just as did the plaintiff in our case, had said that he was not injured. Also, there was no objective manifestation of injury. "Whether or not the collision caused injury to Morseman [the plaintiff] was a question of fact for the jury." (P. 224.)

In *Reeder* v. *Hoag* (1958) 158 Cal.App.2d 41 [321 P.2d 793], the verdict was in favor of one of the plaintiffs and against one of the defendants in the sum of " 'zero dollars.' "

The jury was instructed that because of a $600 payment by the defendant to the plaintiff, any verdict they might render the plaintiff should be reduced by $600. The court held that the effect of the verdict was a finding that the plaintiff had not suffered damages in excess of $600. The court pointed out: "We are required to view the evidence in the light most favorable to the jury's conclusion." (P. 44.)

But in our case, different from the situations in the cases above set forth, there are two reasons which make it difficult to determine what the jury meant by its verdict. The first is that although plaintiff stated at the time of the accident that she had not been hurt, there was no real attack upon her evidence of injury, other than as to the extent of that injury. Plaintiff testified that she sustained injuries to her right hand and forearm, left hip and thigh, neck and spinal column. All of her injuries cleared up, she said, within a couple of months, except her back and thumb conditions. (She testified that although she told the traffic officer at the time of the accident that she was not injured, she discovered when he gave her a pencil with which to write that her thumb was all blood and a large lump had arisen there.) A reading of the surrounding testimony indicates that plaintiff's comment about not being injured may well have been that of a dazed person. Dr. Elston examined plaintiff on the day following the accident, and again the next day. There were contusions of the right forearm and thumb, the left knee and thigh, and a large ecthymotic area along the lateral aspect of the thigh. These were objective matters. Subjectively she complained of severe headache, severe pain over the left contravertebral angle, pain over the first, second and third lumbar vertebrae, severe pain in the left thigh, in the middle right forearm, and right thumb. The doctor gave her diathermy and ultrasonic treatments. He treated her about three times a week until March 20, then about twice a week until April 28, and thereafter about once a week for a period. The doctor thought that plaintiff had torn a ligament in her lumbar region. Dr. Elston sent plaintiff to Dr. Grover, who felt that there was no question but that there was a ligament disturbance from deep back muscles to the spine itself, or up in the region of the lower ribs. Dr. Elston considered that she had "a whiplash injury of the neck, mild, severe lumbar strain, contusion over the right contravertebral angle, contusion of the left lower extremity, contusion of the right forearm and right hand." Plaintiff at the time of trial was still under treat-

ment, still being taped, and would require continuation of her treatment.

Dr. Heegler examined plaintiff at defendant's request about a year after the accident. He found some thickening at the base of the right thumb, and a definite loss of grip. There was limited rotation just above the hip and a limited lateral bending. She complained of pain with all motions of her low back. He was of the opinion that she had sustained "multiple injuries caused by the impact and being thrown about in her automobile." He felt that she had recovered "from most of her injuries." He did not believe that she had suffered a whiplash injury. He believed that "she has some permanent residual disability in the right thumb and hand which will probably continue."

Dr. Elston testified that he did not advise plaintiff to quit work immediately after the accident. He assumed that she would not go to work. She took a week off. Defendant contends that as it was the week before Christmas plaintiff's absence from work was not because of her condition. Defendant also points out that Dr. Heegler testified that the course of treatment he would have followed was a course different from that followed by Dr. Elston.

While a jury may disregard the testimony of witnesses "if there is any rational ground for doing so" (*Blank* v. *Coffin* (1942) 20 Cal.2d 457, 461 [126 P.2d 868]; see *Chaparkus* v. *Webb, supra,* 178 Cal.App.2d 257) there is in our case no rational ground for believing that plaintiff did not receive some injury in the accident. While perhaps it was not a whiplash injury, the evidence clearly shows that at the time of the trial she was suffering from the thumb injury, at least. She had expended $1,271.31 for medical treatment. While the jury might have questioned whether the entire amount of the bill was necessary for treatment of plaintiff's injuries, there was no reasonable ground upon which it could reject it all. In view of the foregoing it is not reasonable to conclude that the jury used the form of verdict which it used, to indicate that it was finding that plaintiff had suffered no injury in the accident.

The second factor compelling the conclusion that the jury's use of the verdict form was because they were confused, is that there was no dispute as to the fact that plaintiff Roy's automobile was damaged in the accident, and that the repairs thereto cost $646.81. If defendant was negligent and plaintiff was not, then plaintiff Roy was entitled to a verdict

for the amount of the damage to his car. It may very well be that what the jury intended was to find both sides at fault and to allow a recovery to neither, but we have no way of determining that such was the case.

It should be pointed out that in its instructions the court in nowise explained the forms of the verdicts to the jury. It merely said, "There have been prepared for your convenience and use, four forms of verdict which under the law it is impossible [*sic*] for you to return in the case now on trial . . . . Two forms of this verdict can be found here."

In *Mish* v. *Brockus* (1950) 97 Cal.App.2d 770 [218 P.2d 849], there were six verdicts. "Verdict Number 1 is in favor of defendant Walter and Number 6 is against him but 'no damages.' Verdicts Numbers 2, 3, 4 and 5 are likewise inconsistent and unintelligible. Number 2, while uncertain and incomplete, is an apparent attempt to find in favor of plaintiffs without stating the amount intended to be awarded. Number 3 is clearly in favor of all three defendants and against plaintiffs. Number 4 is in favor of plaintiffs and against all defendants but the amount of damages is not assessed. Number 5, although headed 'Guilty of Wilful Misconduct,' is in favor of defendants Robbins and Bruckus [*sic*] and against plaintiffs." The court held that "the intent of the jury is not ascertainable" (p. 776) and reversed the judgment. In our case the intent of the jury is not ascertainable.

In *Taylor* v. *Pole* (1940) 16 Cal.2d 668 [170 P.2d 614], the jury found for Taylor but assessed his damages at "$No." The court held this verdict to be erroneous, because even though the jury might have found that Taylor had not suffered injury in the accident upon which the case was based, his automobile had been damaged to the extent of $117.64. On motion for new trial the trial court tried to repair the situation by ruling that a new trial would be granted unless the defendant paid Taylor that sum. The court said (pp. 674-675): "Had only the issue of property damage been before the jury, the trial court might have been justified in concluding that the omission of that item from the verdict was pure inadvertence. On the other hand, had only the issue of damages for personal injuries been submitted, the conclusion might have been warranted that the jury's failure to award even nominal damages was the result of its failure to credit Mr. Taylor's uncorroborated statement that he was hurt. The fact is, however, that both elements were involved, and the trial court was not entitled to indulge in a dual speculation with respect to them.

It could not infer that the failure to make an award for property damage was the result of oversight, and by the same token infer that the failure to make an award for personal injuries was the result of discrediting Mr. Taylor's testimony. No severance of issues was made upon the trial or on submission of the cause to the jury. In assessing Mr. Taylor's damages at naught, therefore, the jury made a finding with respect to both property damage and personal injuries. This finding, being without support in the evidence, was erroneous in its entirety.'' In the instant case reconciling the fact that the jury found for plaintiffs but did not award anything for the damage to the automobile and gave no damages whatsoever to plaintiff for her injuries, can only be done by speculation or conjecture.

Defendant contends that plaintiffs are in no position to rely upon the incorrectness of the verdict, because they did not request the court to require the jury to return for further deliberation. ■ See *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063] : ''The proper procedure where an informal or insufficient verdict has been returned is for the trial court to require the jury to return for further deliberation. . . .

■ ''It is well established by numerous authorities that when a verdict is not in proper form and the jury is not required to clarify it, any error in said verdict is waived by the party relying thereon who at the time of its rendition failed to make any request that its informality or uncertainty be corrected.''

■ Here, on the return of the verdict, plaintiffs immediately called the attention of the court to the incorrectness of the verdict. The court first took the position that the verdict was a correct one. Plaintiffs mistakenly contended that because of its incorrectness and the discussion, they were entitled to a mistrial. The court, instead of instructing the jury as to the proper use of the forms and sending it back to return a correct verdict, demanded and very insistently, that plaintiffs stipulate, not that the jury return a verdict in accordance with what they intended to do, but that they must use ''the other form.'' Just which form the court intended does not appear, but apparently he meant a defense verdict form. In view of the colloquy between court and counsel it is clear that a request that the jury return to further consider their verdict would have been an idle act and that the court would not have sent the jury out unless plaintiffs' counsel

stipulated as to the form the jury might use. Counsel could not in good conscience have so compromised his client's case. There was sufficient objection by plaintiffs to raise the issue on appeal. ▉ Section 619, Code of Civil Procedure, providing that an "informal or insufficient" verdict may be corrected by the jury, does not contemplate a party's doing more than to warn of the error and apprise the court that the party does not acquiesce. (See *Grossblatt* v. *Wright* (1951) 108 Cal.App.2d 475, 481 [239 P.2d 19].)

In view of our determination that the judgment must be reversed because of the confusing verdict, it is unnecessary to consider the other contentions of plaintiffs.

The judgment and order denying new trial are reversed.

Sullivan, J., and Molinari, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 24, 1962.