[Civ. No. 26217. Second Dist., Div. One. Dec. 17, 1962.]

FLORENCE PATRICIA HUNT et al., Plaintiffs and Appellants, v. CONNIE M. BURGESS, Defendant and Respondent.

James E. Black for Plaintiffs and Appellants.

Gilbert, Thompson & Kelly, William D. Jennett and Jean Wunderlich for Defendant and Respondent.

WOOD, P. J.—Action for damages resulting from a collision of automobiles at an intersection of streets in Los Angeles.

Plaintiff Miss Hunt was driving her automobile north on Las Palmas Street, and plaintiff Mrs. Double was a passenger in the automobile. Defendant Mrs. Burgess was driving her automobile east on Lexington Street.

The verdict, as to plaintiff Hunt, was: "We, the jury . . . find for the defendant . . . and against the plaintiff Patricia Hunt."

The verdict, as to plaintiff Double, was: "We the jury . . . find for the plaintiff, Barbara Double, and against the defendant, Connie M. Burgess, and assess plaintiff's damages in the sum of $ nothing."

The judgment, upon the verdicts, was that plaintiffs take nothing by the complaint, and that the defendant recover costs.

Plaintiffs' motion for a new trial was denied. They appeal from the judgment.

The complaint alleged that plaintiff Hunt sustained personal injuries as a result of the collision, and thereby was damaged

in the amount of $2,500; and her automobile was damaged in the amount of $100. It was alleged therein that plaintiff Double sustained personal injuries as a result of the collision, and thereby sustained general damages in the amount of $20,000, and special damages (for hospital and medical expenses, and loss of earning capacity) in an unknown amount but the amount would be ascertained later.

During the trial, the plaintiff Hunt waived her claim for damages for personal injuries.

Appellants contend that the evidence was insufficient to support "the verdict" and the judgment. Their argument pertains principally to "the verdict" as to appellant Mrs. Double, however, since both plaintiffs are appealing, it will be assumed that their contention pertains to both verdicts. (Appellant Hunt's only remaining claim is for $100 for automobile damage.)

Each street referred to is 40 feet wide. East and west traffic (on Lexington) was required to stop, at a boulevard stop sign, before entering the intersection.

Miss Hunt (plaintiff) testified that on July 24, 1958, about 12:20 p. m., she was driving north on Las Palmas at the rate of approximately 25 to 30 miles an hour; when she was about four car lengths from the intersection (approaching it) she observed that no car was stopped on Lexington at either stop sign, on the southwest or northeast corner; there is a commercial building at the southwest corner of the intersection— it is about 6 feet from the west curb of Las Palmas and about 6 feet from the south curb of Lexington; the southwest stop sign is about 10 feet from the intersection corner; she first saw defendant's car when she (plaintiff) was about a car length from the intersection, and when defendant's car was about half a car length into the intersection and was traveling approximately 25 to 30 miles an hour; at that time she applied the brakes quickly; the impact occurred when the front of her car (Hunt's car) was about 3 or 4 feet from the center of Lexington; after the impact the cars moved diagonally (to northeast) about 3 or 4 feet; at the time of the impact defendant's car was traveling about 25 to 30 miles an hour; she did not see the defendant stop before entering the intersection; it was a powerful impact—the front of the other car hit the left front fender of the Hunt car and bent the fender against the tire, and the front bumper and headlight were also damaged; the repair bill was $144 (she paid $100); defendant said that the accident was her (defendant's) fault;

after the accident, the plaintiffs went, in Hunt's car, to a drive-in restaurant for lunch.

Mrs. Double, who was a passenger in the Hunt car, testified that as they were approaching the intersection they were traveling at the rate of approximately 25 miles an hour; she first saw defendant's car when the Hunt car was just entering the intersection, and when defendant's car was just a little to the west of the center line of Las Palmas; the defendant's car was traveling very fast and the impact occurred a split second after she (witness) saw the other car—there was a jarring crash; she went to a nearby shop and telephoned the police; defendant said that the accident was her fault; as a result of the collision, she (witness) sustained general bodily soreness which lasted a week or two and left her with a stiff neck; she did not have any cuts, abrasions, or fractures from the accident; she had difficulty moving her head; at one time her head was tilted to the left and her shoulder was drawn up, and she had no feeling in her left arm; she endeavored to treat her condition by taking hot baths and applying heat to the sore areas; if she had time during the day she would take a hot shower and would lie upon a heating pad; about six weeks later (in September), her neck became worse; the first time, after the accident, that she consulted a doctor was September 14; the doctor treated her three times a week for a period of some months; then he treated her twice a week for some months; then he treated her once a week for a few months; after a period of ten months he treated her every other week; the treatments were at the doctor's office and consisted of manipulating her neck by using a harness contraption; on two occasions (in October and November) she was treated at a hospital, where she was placed on a stretcher, taken to the fracture room, and given an anesthetic; she was in the hospital one day on each occasion; her last treatment by the doctor was about a year after the accident; the doctor's bill for $987.50 has been paid; hospital bills (including X-rays and charges of anesthetists) amounted to $128.83.

On cross-examination, she was asked if, at the time she went to see the doctor, she was aware that this case was set for trial. She replied that was one of the reasons she went to see him— that she was thinking of going to see him as a final check-up, and she called her attorney and asked him if it would be a good idea; he replied in the affirmative; she is now completely recovered.

A police officer, called as a witness by plaintiffs, testified

that he arrived at the scene about 12:25 p. m. and observed two cars which were approximately in the center of the intersection; the point of impact was 11 feet west of the east curb of Las Palmas and 6 feet north of the south curb of Lexington; defendant's car made skid marks 12 feet long; plaintiff Hunt's car made skid marks 7 feet long; defendant said that she had made the boulevard stop, but did not see the other car, and that the accident was her fault.

Defendant testified that she was driving her automobile east on Lexington at the rate of approximately 20 to 25 miles an hour; she applied the brakes when she was about two car lengths from the intersection, and at that time she could see about three car lengths south on Las Palmas; when she was even with the stop sign she was traveling between 10 and "zero" miles an hour—closer to zero, and she stopped just beyond the sign; when she saw no one coming she started up again; when she was even with the west curb of Las Palmas she was traveling between 5 and 10 miles an hour; at that time she saw the Hunt car in the intersection, traveling between 40 and 50 miles an hour; she (witness) applied the brakes and turned the wheels to avoid the car; at the time of the impact she was traveling about 10 or 15 miles an hour; she (witness) had a conversation with the plaintiffs wherein she made a remark to the effect that she guessed the accident was her fault.

The doctor who treated Mrs. Double did not testify.

Appellant Double argues that the verdict as to her was against the law in that the jury failed to award damages for pain and suffering, and special damages for amounts paid for medical services. She argues further that the jury was confused and, as a result thereof, the verdict as to her was informal and insufficient. She asserts that confusion existed. because the jury believed that its verdict against Miss Hunt and in favor of defendant (where contributory negligence was an issue) was binding on the jury in arriving at its verdict in Mrs. Double's case.

As above shown, the verdict in Mrs. Double's case was: "We . . . find for the plaintiff, Barbara Double, and against the defendant, Connie M. Burgess, and assess plaintiff's damages in the sum of $ nothing."

After the jury had deliberated a few hours, and had returned to the courtroom, the judge said that he had a note from the foreman of the jury wherein he asked: "If you find

contributory negligence on the part of the plaintiff [Miss Hunt] must that excuse the defendant from all monetary liability to plaintiff automobile?'' Thereupon the judge reread the instructions on the subjects of negligence, ordinary care, and contributory negligence. In addition thereto he re-read instructions wherein it was stated: that the case of each plaintiff is separate from the other; and that the defense of contributory negligence is submitted only as to Miss Hunt. Thereupon, the foreman and other members of the jury said that answered the question. Then the jury retired for further deliberation. A few hours later, the jury returned and said: ''[I]n one of the decisions we had to reach, we were in doubt as to whether it was to be signed or not.'' The judge said: ''You must sign whatever verdict you bring back.'' The foreman said: ''There were three papers [referring to forms of verdicts] and the third one we were in doubt whether or not we were to sign that one or not. It was the suit of Mrs. Double and there was one that some of us felt, myself included, that the wording wasn't——.'' The judge said: ''The only thing I can do is look at the verdicts. Do counsel wish to attend me at the bench.'' The verdicts were handed to the judge. The judge said: ''I see what you mean. You are speaking only of Mrs. or Miss Hunt.'' The foreman said they were speaking of the one regarding Mrs. Double.

The judge read aloud the form of verdict whch was to be used if the jury found in favor of Mrs. Double (the form last above quoted herein, where there was a blank space after the dollar sign at the end of the form). Then the foreman said: ''The thing is, supposing we found for—could we possibly find for her and not give her any monetary compensation? The contention was, I thought if we find in favor of Miss Burgess, it would bind in both cases.'' The judge said: ''Yes, if, after consideration of all the evidence, and in view of the finding of liability, you find that you do not feel that the Plaintiff, Barbara Double, is entitled to recover any sum, why just fill it in, in blank, then, if that is the decision. Will you hand this to the jury. Do you wish to retire again?'' The foreman said: ''There is nothing further to retire about, your Honor, except to sign it. We were just in doubt as to whether or not it should be signed or not.'' The judge said: ''All right, sign it, whatever the Jury's verdict is. If you wish to retire to the room, you may do so, or sign it here.'' Then the foreman signed the verdict. The verdicts, hereinabove quoted, were read by the clerk. The jury, upon being

polled, answered as follows: 11 in favor of, and 1 against, the verdict in the plaintiff Hunt case; 12 in favor of the verdict in the plaintiff Double case.

Appellant Double asserts in effect that since the verdict stated that the jury found in favor of her, it should have awarded damages to her, especially since the evidence as to her injuries and expenses was uncontradicted.

Contributory negligence was an issue in the Hunt case, but it was not an issue in the Double case (the alleged defense of contributory negligence in the Double case was withdrawn during the trial). The verdict in the Hunt case (in favor of defendant) could have been on the basis that defendant and Hunt both were negligent or that defendant was not negligent. Since there was no issue of contributory negligence in the Double case the verdict in that case finding in favor of Mrs. Double indicates that the jury found that defendant was negligent. Therefore, it would seem that the verdict in the Hunt case (in favor of defendant) was on the basis that defendant and Hunt both were negligent. In other words, it would appear that in each verdict the finding was that the defendant was negligent—that is, in the Hunt case the defendant was negligent, but since Hunt was also negligent she was not entitled to damages; and in the Double case the defendant was negligent (and Double, the passenger, was not negligent), but Double was not injured in the collision and was not entitled to damages. The last question which the foreman of the jury asked the judge indicates that the jury had considered the matter of finding in favor of Mrs. Double on the question of liability for damages, if any, but the jury was in doubt as to whether it could find liability and not award damages. That question was: "The thing is, supposing we found for—could we possibly find for her and not give her any monetary compensation?" After the judge answered in the affirmative, the foreman said in effect that there was nothing further to do, except to sign the verdict. When the verdict was read in open court—stating that the jurors found for the plaintiff Double and assessed her damages as nothing— the jurors were unanimous in saying that was their verdict. At that time no party raised any question relative to the form or alleged insufficiency of the verdict or relative to alleged confusion on the part of the jury. ▮▮ It is true that the testimony of Mrs. Double, regarding her physical condition, was uncontradicted in the sense that no person testified contra to her statements on that subject. The evidence, however,

regarding the manner in which the collision occurred, the force of the impact, and the activity of that plaintiff immediately and for several weeks after the impact, might have been regarded by the jury as contradictory of her statements. A question of fact was presented as to whether her alleged physical condition was a proximate result of the collision. There was evidence that the cars moved 3 or 4 feet after the collision, that Mrs. Double went to a nearby shop and called the police, that plaintiffs went to lunch after the collision, that Mrs. Double did not sustain any cut, or abrasion, or fracture, and she did not consult a doctor until approximately six weeks after the accident. The doctor who treated her did not testify. Under the evidence here, the jury could find that defendant was negligent and was liable for the damage, if any, resulting to this plaintiff; and it could also find that she was not damaged. The form of verdict used herein, with respect to Mrs. Double, expresses findings on those two issues, that is, that there was liability on the part of defendant for the collision, but this plaintiff was not damaged. Under the circumstances here, the trial judge could find that the verdict was sufficient and that the jury was not confused.

Appellant cites *Bisnett* v. *Hollis*, 207 Cal.App.2d 142 [24 Cal.Rptr. 231], in support of the argument that the verdict in the Double case is insufficient, and the jury was confused. In that action for damages for personal injuries resulting from an automobile collision, the verdict stated that the jury found in favor of plaintiffs, and against defendants, and awarded damages ''in the sum of $ none.'' That case is distinguishable from the present case in that (1) there was no real attack therein upon the evidence of injury, other than the extent of the injury; (2) two doctors who treated that plaintiff Mrs. Bisnett testified regarding the injuries; (3) a doctor, who examined her at defendant's request, testified that in his opinion she had been injured by being thrown about in her automobile, and that there was some permanent disability; (4) there was no dispute that the automobile was damaged and that the repairs cost $646.81; (5) when the verdict was returned, the plaintiffs immediately called the attention of the court to the incorrectness of the verdict and in effect objected to the form of the verdict. Under the circumstances of that case, wherein there was undisputed evidence of injury and of substantial damage to the automobile and there was an immediate objection to the verdict, it was held that the verdict was confusing. In the present case, the matters of injury and

damage were in controversy, there was no medical testimony, and no objection to the form of verdict.

In *Morseman* v. *Mangum*, 177 Cal.App.2d 218 [2 Cal.Rptr. 67], the jury returned a verdict in favor of one of the plaintiffs and assessed damages in the sum of "None" dollars. It was held therein that whether or not the automobile collision caused injury was a question of fact for the jury.

In *Chaparkas* v. *Webb*, 178 Cal. App.2d 257 [2 Cal.Rptr. 879], wherein the jury returned a verdict in favor of a plaintiff and assessed his damages "in the sum of $ None," it was said (p. 262) that the burden was on that plaintiff to prove his injuries or damages, and that as a result of his vague, uncertain, and conflicting statements, as well as the evidence as a whole, the jury was free to disbelieve his testimony. The contention therein that the verdict was contrary to the evidence so as to require a finding of damages was not upheld.

In the present case the verdict in the Double case was not insufficient, or confusing, or against law. ■■■ The evidence was sufficient to support both verdicts.

■■■ Appellants contend further that the trial court did not consider their motion for a new trial. They refer to an opinion by the trial court regarding the motion for a new trial, and they assert that it appears therefrom that the court considered the matter as an appellate challenge, and that there was no indication therein that the court purported to pass upon the adequacy of the evidence or whether the verdict is against law. Minute orders show that both plaintiffs made a motion for a new trial, that the motion was argued, submitted, and denied. The judge wrote a supplemental opinion in connection with the motion for a new trial. The opinion, four pages in length, discusses various matters regarding the evidence and the law. Among other things stated therein is: "The trier of fact may reject the uncontradicted testimony of the witness provided he does not do so arbitrarily. Credibility of the witness is in the first instance for the jury." It does not appear that the judge failed in any respect relative to his duty in considering the motion for a new trial.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.