[Civ. No. 939.    Fifth Dist.    June 24, 1969.]

WILLIAM WRIGHT, Plaintiff and Appellant, v. TITLE INSURANCE AND TRUST COMPANY, as Co-executor, etc., et al., Defendants and Appellants.

DiGiorgio, Davis, Nairn, Hastin & Klein, DiGiorgio, Davis. Hastin & Klein and Kenneth N. Hastin for Plaintiff and Appellant.

Young, Wooldridge, Paulden & Self, Young, Wooldridge, Paulden, Self & Williams and Rod Williams for Defendants and Appellants.

CONLEY, P. J.—This fiercely fought litigation arose from a plan for the peaceable passage of ownership of the stock of an automobile corporation upon the death of one co-owner. The record shows that each of the two owners of one-half of the stock entered into a written contract in which each gave the other, upon the death of either, the option to purchase the shares of the decedent, and an oral contract whereby each of said persons agreed to provide a policy of insurance in the

sum of $40,000 in which the other stockowner was named as beneficiary. Upon the death of Dick S. Stricklen (referred to herein as Stricklen) it was discovered that, while William Wright (called Wright herein) had purchased the $40,000 worth of life insurance provided for in the oral agreement, the decedent Stricklen had neither purchased a similar policy nor assigned to Wright as beneficiary $40,000 of life insurance from his own group of policies the proceeds of which amounted to $200,000.

Wright thereupon sued the estate of Stricklen for $40,000, together with interest from the date of Stricklen's death, in a first cause of action, and for $200,000 in a second cause of action; the latter claim was founded on the theory that the failure of Stricklen to purchase the insurance prevented Wright from acquiring the automobile business with a consequent loss of profits. The appellants' answer amounted to a general denial of the allegations of the complaint; it added affirmative defenses: (1) that the fourth amended complaint did not allege sufficient facts to constitute a cause of action; (2) that the oral contract with respect to the purchase of insurance in favor of the other shareholder was not supported by any consideration; and (3) that the statute of frauds rendered the oral agreement to provide $40,000 of insurance unenforceable.

A jury trial commenced on May 22, 1967. When all the evidence was in, appellants made a motion for a directed verdict. The motion, after being duly argued, was denied. Following closing arguments, the jury retired to begin its deliberations; it ultimately returned a verdict in favor of respondent in the amount of $40,000, and nothing more. Appellants subsequently made a motion for judgment notwithstanding the verdict, and ultimately a motion for a new trial. Both motions were denied by the trial court. Thereupon appellants filed their notice of appeal from the judgment. The plaintiff filed a cross-appeal asking for legal interest on the $40,000 and for damages on the second cause of action.

Stricklen and respondent first considered joint business efforts sometime in mid-1961. Stricklen then owned a Rambler car agency in Bakersfield and was looking for a person with whom he could associate to further develop the business. As the result of negotiations, Thrasher Motors Co., a California corporation, was purchased. Respondent contributed $37,500, and Stricklen put in some cash along with certain assets he had in the Rambler agency. United California Bank handled the car financing for Thrasher Motors; it advised and in fact

insisted that the two parties enter into a buy and sell agreement. It also suggested that the agreement be funded by mutual life insurance policies. Stricklen suffered a heart attack in late 1961 and the bank applied increased pressure that some contract be worked out. On February 28, 1962, a buy and sell agreement was signed by the parties, but it made no reference to the purchase of life insurance policies. Early in the same month Wright and Stricklen had discussed getting insurance on their lives and naming each other as beneficiary. Respondent said that he would buy a $40,000 policy and Stricklen, since he was probably uninsurable, agreed to perform by assigning one of his existing policies.

On February 19, 1962, respondent made an application for a $40,000 life insurance policy to the New York Life Insurance Company; the initial premium was paid on the same day and the check was signed by respondent's wife. The New York Life Insurance Company issued a policy on March 23, 1962, naming Stricklen as beneficiary. Respondent told Stricklen that he had taken care of the life insurance matter, and Stricklen replied that he had done the same.

Subsequently, respondent changed insurance companies and obtained a policy similar to the New York Life policy through Northwestern Life Insurance Company; this was done because Northwestern Life would write the policy for a lower premium. Numerous premium checks thereafter were signed by respondent's wife. This policy included a double indemnity provision, and as a result respondent's wife was named beneficiary of that portion of the policy with Stricklen the beneficiary of the base policy.

Stricklen died on April 17, 1964, and an examination of his insurance file revealed that none of his policies had been assigned to respondent as beneficiary. Respondent then filed a claim against Stricklen's estate and, when that was rejected, instituted this proceeding against the executors for damages. Respondent points out that the evidence amply supports the existence of the oral agreement to purchase mutual life insurance policies, and that the procurement and continued existence of Wright's policy is recognized in appellants' opening brief. The jury returned a verdict in favor of respondent, and appellants filed their notice of appeal in timely fashion. Respondent also filed a cross-appeal on the question of interest on the $40,000 and on the amount of damages claimed under the second cause of action.

Up to a certain point there is no fundamental difference between the parties concerning the admitted facts. Both sides

agree that Stricklen and Wright carried on business through the Thrasher Motors Co. in Bakersfield and that each of them owned one-half of the stock of that corporation; that in the course of their business, initially because of the urging of the bank with which they did most of their financing, they agreed that each of them would give the other an option to purchase the stock of the first deceased partner, and that they also agreed to insure, or provide insurance, in the amount of $40,000 to the surviving stockholder; that Wright obtained such a policy which on the face of it insured Wright's life in favor of Stricklen as beneficiary in the amount of $40,000, and that Stricklen did not do so although he had policies of insurance which resulted in payment by the companies of $200,000.

Where the parties' contentions diverge is immediately beyond those conceded facts as follows:

(A) The appellants claim that the trial court erred in denying their motion for a directed verdict, because they say that Wright did not comply with the terms of his agreement in that, although he procured a policy which on its face insured his life for $40,000, it did not actually do so by reason of the fact that Wright's wife did not concede in writing that the policy was effective in that amount in favor of Stricklen; they argue that, under the community property law, Mrs. Wright would have been entitled to one-half thereof, or $20,000, in the event of his death, as community property;

(B) That the trial court erred fatally when it found that the oral agreement was a contract separate from the written agreement, because both contracts, written and oral, constituted a single agreement and, since no provision was contained in the writing relative to insurance, one must conclude that no provision for insurance was intended; therefore, they say that the written contract, wholly silent as to insurance, was the only contract between the parties;

(C) That the court was in error in finding that the oral agreement relative to the procurement of insurance was a collateral agreement;

(D) The trial court committed fatal error in admitting evidence that, upon his death, Stricklen had insurance policies the proceeds of which amounted to $200,000.

The ruling of the trial court denying appellants' motion for a directed verdict was sound. The argument made by appellants on this question was that respondent's wife, upon the hypothetical death of Wright, could have claimed

half the proceeds of his $40,000 policy by reason of the community property law, and that in such circumstances Wright would not have performed his agreement to furnish $40,000 to Stricklen. The trouble with this argument is two-fold: first, it does apply to gifts of community property without the written consent of the wife, but it does not apply to agreements made by the husband when consideration is given for such an agreement.

■ Where a *gift* of community property is made without the consent of the wife it is voidable and on the death of the husband the wife is entitled to claim and, if such claim is made, to receive one-half of the insurance (*Beemer* v. *Roher*, 137 Cal.App. 293, 296 [30 P. 547]). However, this rule does not apply to a business deal such as here in which consideration is given for the agreement. If the designation of a third party as beneficiary is made by the insured for a valuable consideration, the wife is not entitled to claim one-half of the proceeds of the policy. (*Union Mut. Life Ins. Co.* v. *Broderick*, 196 Cal. 497 [238 P. 1034]; see also *Pacific Mut. Life Ins. Co.* v. *Cleverdon*, 16 Cal.2d 788 [108 P.2d 405]; and The California Family Lawyer (Cont. Ed. Bar) § 14.31, p. 515.)

■ Secondly, when the motion for a directed verdict was made the time had not arrived to permit respondent's wife to claim a community interest in the proceeds of the policy.
■ As said in the case of *Blethen* v. *Pacific Mut. Life Ins. Co.*, 198 Cal. 91, 101 [243 P. 431], even a gift by a husband of an insurance policy to a beneficiary other than his wife ". . . is a good and valid gift until avoided by the wife by an assertion of her right to one-half of the proceeds. . . ." (See also *Grimm* v. *Grimm*, 26 Cal.2d 173, 175 [157 P.2d 841].)

■ The evidence shows that Mrs. Wright herself made out a number of checks which paid premiums on the policy in question which would indicate that she knew the surrounding facts and that she did not claim any interest in the policy.

■ The trial court did not err when it found the oral agreement to be a separate contract. During the trial, appellants told the court that they anticipated respondent would attempt to introduce testimony to establish an oral agreement to purchase life insurance. They claimed that such testimony would violate the parol evidence rule, and requested that it first be heard out of the presence of the jury so that the court could determine if this were the case. Testimony was taken out of the presence of the jury pursuant to this request, and the court correctly concluded that the buy and sell agreement

was strictly an option to buy, and that the oral agreement to purchase life insurance was a separate, collateral agreement consistent with the terms of the writing.

The evidence produced at the trial, appellants argue, would tend to prove that the oral agreement occurred before the buy and sell agreement was executed. Relying on Civil Code section 1625 and Code of Civil Procedure section 1856, appellants argue that the oral negotiations were merged into the written contract of February 28, 1962. They claim that the trial court's finding in this respect was in error. Appellants observe that a written agreement supersedes all prior negotiations, and is generally taken to be the complete and final understanding of the parties (*Schmidt* v. *Macco Constr. Co.*, 119 Cal.App.2d 717, 730 [260 P.2d 230] ; *Parker* v. *Meneley*, 106 Cal.App.2d 391, 399 [235 P.2d 101]). They also observe that all conversations are deemed merged into the final agreement which becomes the "written memorial" of their understanding (*Guerin* v. *Kirst*, 33 Cal.2d 402, 410 [202 P.2d 10, 7 A.L.R.2d 922]). The conclusion is thus reached by appellants that the discussions concerning the purchase of life insurance were merged into the February 28 writing, and the trial court's ruling, finding the oral agreement to be separate, was error.

If the oral agreement to purchase life insurance contradicts, varies or modifies the written buy and sell agreement, then, they say that the trial court erred in admitting parol evidence. Appellants rightly contend that prior negotiations cannot be used to contradict, add to, or vary the terms of a written agreement (*Buffalo Arms, Inc.* v. *Remler Co.*, 179 Cal.App.2d 700, 710 [4 Cal.Rptr. 103]), and they believe that the agreement to buy life insurance had that effect on the buy and sell agreement.

The buy and sell agreement provides that the first survivor shall have an option to purchase the deceased's share in Thrasher Motors. The option had to be exercised within six months from the date of death, and the price was to be agreed upon by the survivor and the deceased's estate. If no agreement could be reached the matter was to be submitted to arbitration, but in no event was the option price to be less than $37,000. Appellants claim the oral agreement varied this option, and that the proceeds from the life insurance *had* to be used for the purchase of the other's stock in the business.

It is argued that it is only common sense that if the parties

had contemplated purchasing mutual life insurance policies they would have put that intention in the buy and sell agreement. Accordingly, appellants conclude that when the option agreement identifies the property, fixes the price to be paid and limits the time within which it can be exercised, nothing more is essential to the completion of the legal obligation, and evidence of an oral agreement should not be admitted by the trial court. (*Sorensen* v. *Commercial Credit Co.,* 16 Cal.App. 2d 71, 75 [60 P.2d 169].)

Respondent's position is that the trial court was correct in its determination that the oral agreement to purchase life insurance was separate, collateral, and consistent with the buy and sell agreement. He relies on *Savings Bank of Southern Cal.* v. *Asbury,* 117 Cal. 96, 103 [48 P. 1081], and many other cited cases, for the proposition that: ". . . the rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument." Additional reliance is placed on *Masterson* v. *Sine,* 68 Cal.2d 222, 227 [65 Cal.Rptr. 545, 436 P.2d 561], wherein the California Supreme Court recently held that: "Evidence of oral collateral agreements should be excluded only when the fact finder is likely to be misled. The rule must therefore be based on the credibility of the evidence." The court goes on to say that proof of a collateral agreement should be allowed if the agreement was one that "might naturally" be made as a separate agreement. Here, respondent believes the parties established their right to purchase the business by means of a written agreement and orally agreed to fund the right to purchase with mutual life insurance policies. Respondent says that the volume of evidence was such that the trier of fact could not have been "misled" by evidence of the oral collateral agreement.

With regard to the question of merger of the written and oral contracts, respondent again looks to the *Masterson* case for the answer. It held that one way to determine if integration was intended to occur is to see if such a provision is included in the written agreement. The writing here is silent on this matter, and respondent contends that this indicates the parties did not desire to have their oral understanding with regard to insurance merge into the written agreement.

Appellants contend that the agreements were inconsistent in that:

(1) The oral agreement required the purchase of the business while the written option did not,

(2) The option was for a minimum price of $37,000, while the insurance was for $40,000, and

(3) The written agreement provided for payment in cash or in installments with interest, while the oral agreement presupposed payment in cash alone. The court finds that none of the three alleged inconsistencies vitally, or necessarily, made the existence of separate contracts legally impossible.

In their closing brief, appellants claim that respondent is assuming that the oral agreement was a collateral consistent agreement. They contend that the oral agreement was not a separate or collateral agreement, and that it merged into the buy and sell agreement of February 28, 1962. Since the terms of the oral agreement, according to appellants, were inconsistent with the latter agreement, parol evidence of the oral agreement was inadmissible. We hold that there were two viable agreements.

█  Proof was made by the respondent that, at the time of his death, Stricklen owned insurance policies the proceeds of which totalled $200,000. The purpose was to show that he had ample insurance at that time to enable him to assign from the existing policies of insurance to Wright the sum of $40,000. Appellants assert that the sole purpose of this proof was to prejudice the jury in favor of the plaintiff and against the defendant Mrs. Stricklen. We believe that the admission of the evidence was legitimate and that the claim of error by appellants is not sound.

█  Turning to the cross-appeal and the contention of the respondent that he is entitled to interest on the award of $40,000 in his favor, it appears to us that, although interest was claimed in the fourth amended complaint, respondent did nothing about it during the trial and until after the verdict was recorded and the judgment entered and that he must be deemed to have waived his claim.

The record does not show that any request was made in the instructions for an allowance of interest, and the subject was not pressed prior to the submission of the case to the jury. There was no request by counsel for the plaintiff at the time the verdict was brought in that the jury should be directed to retire and consider the matter of interest. It would appear to us that there was a waiver on the part of the appellant.

Code of Civil Procedure section 619 states: ''Proceedings

when verdict is informal. When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.''

In *Asebez* v. *Bliss*, 178 Cal. 137, at page 138 [172 P. 595], the court says as follows: ''To the form of the verdict as thus rendered the defendant Bliss made no objection at the time of its rendition, nor did he make any request of the court that the jury be directed to make any finding upon the issues tendered in his pleading, nor did he request that the cross-defendant Hitchcock be named in said verdict nor that as to him the jury should return a verdict. If the verdict was defective in these respects it was the duty of the defendant Bliss to have called the attention of the court to such defects before the jury was discharged in order that it might retire and correct its verdict. The code provides for this procedure (Code Civ. Proc., § 619), and by failing to avail himself of it the defendant Bliss must be held to have waived the defects, if any such existed, in this verdict.''

The court in *Bisnett* v. *Hollis*, 207 Cal.App.2d 142, at page 150 [24 Cal.Rptr. 231], comments as follows: ''See *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063] : 'The proper procedure where an informal or insufficient verdict has been returned is for the trial court to require the jury to return for further deliberation. . . .

'' 'It is well established by numerous authorities that when a verdict is not in proper form and the jury is not required to clarify it, any error in said verdict is waived by the party relying thereon who at the time of its rendition failed to make any request that its informality or uncertainty be corrected.' ''

In *County of Humboldt* v. *Shelly*, 220 Cal.App.2d 194, at page 200 [33 Cal.Rptr. 758], the court says: ''The record does not show that plaintiff made any objection to the form of the verdict when it was returned by the jury or any request of the court that the verdict be corrected or clarified. Plaintiff thereby waived any right to complain as to its form. (*Lynch* v. *Birdwell* (1955) 44 Cal.2d 839, 851 [285 P.2d 919] ; *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063] ; *Bisnett* v. *Hollis* (1962) 207 Cal.App.2d 142, 150 [24 Cal.Rptr. 231].)''

■ It is also claimed on the cross-appeal that damages should have been allowed by reason of the fact that plaintiff did not receive the proceeds of the insurance policy as contracted for by the two owners of stock in Thrasher Motors Co. thus preventing purchase of Stricklen's shares of Thrasher

Motors Co. stock. The instructions given by the trial court are not a part of the record. What has been said above with respect to a failure on the part of plaintiff to make any objection to the fact that apparently nothing was allowed on the claim incorporated in the second cause of action is applicable to this contention. Furthermore, there was ample evidence at the trial to the effect that it would have been impossible by reason of past actions on the part of Wright to reinstate the financial standing of Thrasher Motors as conducted by Wright, and it must be presumed that the jury, taking this evidence into consideration, properly intended to deny additional damages.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.